JASMINE OLIVER
8221 W Oklahoma Avenue Apt 3
Milwaukee, WI 53219
(414) 748-3881
Prosejasmine804@gmail.com

JASMINE OLIVER, IN PRO PER

CLERK USDC EDWI
FILED

2022 FEB -7 P 4: 29

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN
DIVISION MILWAUKEE

| | | |
|---|---|---|
| JASMINE OLIVER, | ) | Case No.: **22-C-0149** |
| | ) | |
| Plaintiff, | ) | **JURY DEMANDED** |
| | ) | |
| vs. | ) | |
| | ) | |
| AMAZON.COM SERVICES LLC, | ) | |
| | ) | |
| Defendant | ) | |

**COUNT ONE: TITLE VII –**

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – FAILURE TO**

**ACCOMMODATE, DISABILITY DISCRIMINATION**

Plaintiff JASMINE OLIVER brings this action against the Amazon.com Services ("Amazon" or

"Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §.

In support of her Complaint, Jasmine alleges and states the following:

JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331, and should exercise its supplemental jurisdiction over Jasmine's state law claims pursuant to 28 U.S.C. § 1367.

Venue is proper in this Court under 28 U.S.C. § 1391 because the parties reside in this District, and the unlawful practices complained of occurred within this District.

The causes of action which form the basis of this matter arise under the ADA.

The District Court has supplemental jurisdiction over Count II (ADA) pursuant to 42 U.S.C. §12101, et seq.

The District Court has supplemental jurisdiction over Counts III and IV (WFEA) pursuant to 28 U.S.C. §1367.

Venue is proposed in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. § 2000(e)-5(f).

## PARTIES

Plaintiff Jasmine is a resident of Milwaukee, Wisconsin. She is a nonexempt employee of Defendant within the meaning of 42 U.S.C. § 2000e(f).

Since November 2018 and continuing through June 18th, 2020, Jasmine had been

employed as a full-time Fulfillment Associate, as a packer within AFE 1, which is an organizational division of Amazon.

Defendant Amazon is an incorporated Amazon located in Kenosha. The Amazon is a "person" within the meaning of 42 U.S.C. § 2000e(a), as well as an "employer" within the meaning of 42 U.S.C. § 2000e(b).

Defendant Amazon is headquartered in Seattle, WA. At all times relevant hereto, Plaintiff worked at Defendant Amazon's location at 3501 120th Ave Kenosha, WI. At all times relevant here to, Defendant Amazon is an "employer" as defined by the ADA.

Defendant Amazon employees over 700,000 employees.

Defendant Amazon has 175 Fulfillment Centers Worldwide.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

On August 28th, 2019, Jasmine filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant engaged in sex

(sexual harassment, sexual orientation), disability discrimination and retaliation. This charge was cross-filed with the Wisconsin Department of Equal Rights Division ("ERD"). On August 28th, 2019, Jasmine filed an amended charge, supplementing her allegations as to Defendant's unlawful conduct, attached as Exhibit "A" is a true and correct copy of Plaintiff's Charge of Discrimination.

On November 08,2021, the EEOC issued a Notice of Right to Sue, attached as Exhibit "B" is a true and correct copy of Plaintiff's Charge of Discrimination.

FACTS COMMON TO ALL CLAIMS

Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length. Jasmine has forwarded the EEOC's Notice of Right to Sue to ERD and requested that ERD issue its finding, which request is pending.

**COUNT ONE: TITLE VII – DISABILITY Discrimination Failure to Accommodate**

Plaintiff Jasmine Oliver("Plaintiff"), hereby files this Complaint against Defendants Amazon.com Services LLC ("Defendant Amazon"), alleges as follows:

INTRODUCTION

This case concerns an employer intentionally discriminating against an employee at the time the employee needed accommodations, support, and employer-based assistance. With the Plaintiff Anxiety/ Panic Disorder and Depression, persisting the Plaintiff requested for an accommodation for her known disability pursuant to Defendant Amazon's internal policy as an accommodation for a disability.

**Plaintiff ADA Covered Disability**

Jasmine Oliver was employed as a Fulfillment Associate in the Amazon Fulfilment Center in Kenosha, WI.

Jasmine was employed with Amazon between November 08th, 2018 through June 18th, 2020.

But when she experienced harassment at the Fulfillment Center regarding her perceived sexual orientation this triggered her mental health/Disability and sought accommodations, Defendant responded with persistent discrimination.

It refused to provide her with reasonable accommodations such as separation from employees who had defamed Jasmine by intentionally spreading false rumors that Jasmine was transgender and born a male.

It refused to provide her the accommodations; although Jasmine requested that these accommodations would allow her to not resort to violence and is a peaceable solution. Jasmine has a covered Disability within the context of the ADA.

Jasmine has a disability, of a mental impairment that substantially limits one or more major life activities, which is Anxiety and Depression, which is substantially limiting when active.

Jasmine has a record of disability- Panic Attacks, Anxiety, Depression, when active Jasmine experiences Tachycardia, which substantially limits her major life activities, such as breathing. Jasmine has a record of persistent episodic Anxiety/ Panic Attacks. Tachycardia, which is a fast heart rate, shortness of breath, chest pain and fainting.

In addition, Jasmine has a record of a substantially limiting impairment, which certified board psychiatrist, had assessed her disability when active, with a general assessment function(GAF Score) as low as 15.

A record of a GAF score of 15, medically diagnosed Jasmine, as disabled and was regarded as having a disability.

In addition, Jasmine has also had a GAF score of 50, which anxiety and depression, and was classified by a medical professional of a record of a serious impairment in social/communication, occupational, and work.

Jasmine has record of a disability limitations for the impairment affecting a major life activity such as:

- Breathing
- Concentrating
- Cardiovascular, subject to 29 C.F.R 1630.2(i)
- Communication
- Thinking
- Mood

In or around July of 2019, Jasmine provided the defendant with a request in writing and verbally, which she stated,

" During prime there was more than enough staff and walls for me to be accommodated, 22 walls and approximately 4 stations per wall (22*4=88)"

It refused to allow her to be stationed apart from Harassers, who had knowingly spread false information regarding the Plaintiff, which would have allowed her to work in a hostile free work environment free of triggers.

Despite allowing non-disabled to be stationed away from Harassers- Employees with employee-to-employee incidents while on duty without having to request for accommodations, it refused to allow her to do the same.

In retaliation for Jasmine asserting her rights under federal and Wisconsin law, Defendant singled her out for disparate treatment, ranging from changing the conditions of her employment by reassignment of her job duties to unwarranted intentional infliction of emotional distress by triggering a known disability to denials of the accommodations she needed to do her job.

Ultimately, Defendant forced Jasmine off the job simply because she of her disability and in retaliation of her protected activity.

Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

Defendant Amazon at all times relevant hereto, employs fifteen (15) or more employees.

Upon information and belief, Defendant Amazon provided accommodations previously requested by the Plaintiff to non-disabled employees.

The ADA requires that employers provide reasonable accommodations for the disabled.

Plaintiff at all times relevant hereto, was possessed of the requisite skill, experience, education, and other job-related requirements of his employment position with Defendant Amazon.

Plaintiff could perform the essential functions with or without reasonable accommodations of her employment position while working for Defendant Amazon.

Defendant Amazon, discriminated against Plaintiff by failing at all relevant times to provide her with the reasonable accommodation requested in violation of the ADA including, but not limited to, additional leave time.

It is the duty of an employer to engage a qualified employee in good faith in an inter-active process to determine if a reasonable accommodation can be accorded a disabled employee without resulting in undue prejudice to the employer.

Defendant Amazon discriminated against Plaintiff by failing to engage her in good faith in an interactive process to determine if continued leave was a reasonable accommodation. Instead, Defendant Amazon unlawfully terminated Plaintiff's employment while he was out on leave.

The ADA prohibits employers from retaliating against an employee for requesting an accommodation.

Defendants Amazon, pretextually terminated Plaintiff's employment as a result of Plaintiff's request for an accommodation.

The ADA prohibits employers from discrimination against an employee on the basis of the employee's disability.

Defendants Amazon, pretextually terminated Plaintiff's employment as a result of Plaintiff's disability.

As a direct and proximate cause of the Defendants' unlawful acts and omissions as previously mentioned, Plaintiff has been discharged from his position of employment with Defendant Amazon.

**Defendant's Accommodation's Policy Regarding Disabilities**

Defendant Amazon Accommodations Policy states, "If you have a disability that affects you r ability to perform you job and you feel you need an accommodation, please contact you manager, or Human Resources Business Partner. Amazon will work with you to determine if a reasonable accommodation is necessary and appropriate. The company may request medical certification to verify the existence of a disability or work restrictions, to identify protentional reasonable

accommodations, or to determine any safety or health risks. In addition, Amazon may contact your health provider(s) in appropriate situations. Amazon will treat information regarding your medical conditions and restrictions as confidential, except to the extent your manager or other individuals need to know about your medical situation to help with the reasonable accommodation process"

Defendant Amazon Policy claims, "to comply with the American with Disabilities Act and applicable state and local laws prohibiting discrimination in employment based on a person's physical, mental or sensory disability. All employment practices, employment decisions, and activities are conducted on a non-discriminatory basis."

Defendant Amazon Policy states that, " Amazon will also provide reasonable accommodations for qualified individuals with a disability where medically necessary to perform one's job, except in cases which the reasonable accommodation would create an undue hardship or a health or safety risk would exist."

**Defendant's Human Resource Team Provides Instructions Regarding Accommodations**

On December 02, 2018, approximately 1 month after the hire date of the Plaintiff the Defendants Human Resource staff Shae Mcmillon, sends an email identifying the method in which employees should requests for an accommodation.

**Defendant's Human Resource Team Email With Instructions for Accommodations States**

Hello! This is your Amazon Human Resource Team! Welcome to Amazon! We truly appreciate your decision to be employed with us at MKE1. If you find yourself experiencing personal

difficulties with managing your time, please come see HR. We have many options available to help like child care accommodations, school accommodations, 30-day hardship accommodations, or 1-time exceptions to save your employment. You MUST come talk to us in order for us to be able to help.

Below are some phone numbers you can call for assistance. And as always, if you have questions or need help, just stop by the HR help desk!

(888) 892-7180- Employee Resource Center

Option 1 – Leave of Absence – to request time off for personal or medical reasons

(866) 492-1937 MKE1 Facility

Option 4 – To speak to someone at our Employee Resource Center

Attached as Exhibit "C" is a true and correct copy of Defendants Human Resource Staff Shae Mcmillon email regarding requesting for accommodations and assistance with HR.

### Plaintiff's History of Accommodation's Requests With the Defendant

On May 09th, 2019, the plaintiff had a minor surgery (birth control implant procedure), where the Plaintiff medical provider informed her that she would have lifting restrictions and provided her with a doctor's note and paperwork detailing her after summary visit.

On May 10th, 2019, the plaintiff followed the Defendants accommodation policy provided in the December 2nd, 2018, email, which stated that in order for her to receive help from HR she must come see them.

53.

On May 10th, 2019, the Plaintiff followed the defendants policy because she viewed the term MUST as a requirement and upon the start of her shift she followed the defendants instructions for in-person accommodations and waited in line with other associates to speak with HR in person regarding her new restrictions provided by her medical provider.

On May 10th, 2019, the Plaintiff, saw Shae Mcmillon, April, Eric and another Human Resource Staff Member, each individually assisting employees regarding HR matters in-person.

On May 10th, 2019, the Plaintiff, is greeted by Eric Whitted McCoy and instructs her to take a seat and asks her, " what can I help you with today."

On May 10th, 2019, the Plaintiff, requests for her first accommodation by stating, "I was informed by my medical provider that I cannot lift anything heavier than a gallon of milk because I recently had a minor surgery for a birth control implant."

On May 10th, 2019, the Plaintiff, provides Human Resource Representative Eric with a doctor's note and her after summary visit for her lifting procedure and Human Resources Eric provided her with an application to apply in-person for an accommodation.

On May 10th, 2019, Eric provides the plaintiff with a questionnaire, a release of information form, and her job description for her role as a Fulfillment Associate according to the Defendants policy, which states Amazon will work with you to determine if a reasonable accommodation is necessary and appropriate.

On May 10th, 2019, Eric asks the plaintiff according to the defendants policy if she able to perform her job based on the job description that he provided, and the Plaintiff said no because she is not able to lift up to 50 pounds with or without reasonable accommodations.

On May 10th, 2019, Human Resources Eric determined that the Plaintiff would not be accommodated because even with a reasonable accommodation the Plaintiff would not be able to lift or bump her arm due to her surgical implant.

On May 10th, 2019, Human Resources Eric scanned all the Plaintiff documents and informed her that she would be on a leave of absence instead of an accommodation, which he described as a certificate of Fitness.

On May 10th, 2019, Human Resources Eric informed the plaintiff that a member from the Employee Resource Center would contact her regarding her leave of absence to request a certificate of fitness from her medical provider within 7 days to certify her return to work.

Although, the Plaintiff was informed that she would not be accommodated for her restrictions, Amazon worked with her and provided her a leave of absence instead the same day. Attached as Exhibit "D" is a true and correct copy of Defendants Leave of Absence Policies.

The Defendant Amazon engaged in the interactive process with the Plaintiff according to her in-person visit with Human Resources until the Plaintiff engaged in protected activity. Attached as

Exhibit "E" is a true and correct copy of Defendant acknowledging an onsite HR visit on May 10th, 2019.

## Plaintiff Contacts Defendant Amazon's Human Resources Business Partner And Requests For an Accommodation Written & Verbally July 2019

The Plaintiff has a disability, which began to affect her ability to perform her job according to the Defendants Amazon job description, so she requested for an accommodation based on the defendant's Human Resources instructions regarding requesting for accommodations in person, by stating employees Must come see them.

In summary, the Plaintiff requested for accommodations based on harassment that the plaintiff encountered, which was allowed by the Defendant and discussed in greater detail within this complaint.

The Plaintiff, medical records, details that the Plaintiff, GAF ( General Assessment of Functioning) can escalate to a severe impairment that affects the Plaintiff ability to work.

The Plaintiff disability has episodic triggers, which she has experienced approximately 21 years prior to requesting for an accommodation with the defendant.

In or around July 2019, the Plaintiff began to experience intense triggers specifically linked to her disability and the individuals, who had intentionally provided false statements regarding the Plaintiff (Harassment).

The Plaintiff medical condition described in greater detail above indicates that the plaintiff will have episodic anxiety/ panic attacks, which causes her to experience Tachycardia and shortness of breath, affecting her major life activities of breathing and cardiovascular.

In or around July of 2019, The Plaintiff visited Amcare, which is an onsite medical facility within the warehouse, and she informed the Amcare associate that she was having trouble breathing and chest pains.

In or around July of 2019, The Amcare male associate specifically asked the Plaintiff if she had asthma or Anxiety?

In or around July of 2019, The Plaintiff informs the Amcare worker that she has anxiety, and he informs her that she should drink some water and return to her shift.

In or around July 2019, the Plaintiff follows the Defendants accommodations Policy regarding accommodations and requested for an accommodation by visiting HR, which they informed her is a must.

In or around July of 2019, The Plaintiff visits HR stationed at the HR help desk tower and provides James San, with statements detailing harassment, a request for the harassment to stop as well as a written accommodation requests.

In or around July of 2019, James San, was sitting next to Human Resource Business Tyrell Townsend and instructed the Plaintiff to clock in, so that they could discuss official business and they would discuss the statements in greater detail in his office.

In or around July of 2019, James San and the Plaintiff discussed the protected activity she engaged in by reporting harassment and her request for accommodation within his office.

In or around July of 2019, the Plaintiff informed James San that she has extremely bad anxiety and that's why she requested to not be stationed near harassers Davina Mcgrown, Kimberly Nash and Tayveion Victorian( associates who knowingly repeated and made false statements regarding the Plaintiff Sexual Orientation.)

In or around July of 2019, the Plaintiff informed James San close to a total of 10 times and repeated that she has really bad anxiety.

The Plaintiff provided written statements asserting the term accommodation, a method for accommodation, why the accommodation was necessary to perform the essentials of her job, and informed the Defendant that she has anxiety with both a written and verbal statement and at no point did the defendant engage in the interactive process as it had done with her in person request for an accommodation on May 10th, 2019.

The Plaintiff had multiple copies of the written statements and Human Resource Business Partner James requested if he could hold onto the written statements, which contained statements

that should have triggered the same accommodation process as the Plaintiff May 10th, 2019, in person request.

Although, Human Resource Business Partner James and the Defendant should have known that this was an accommodation request, which takes only 1 day the defendant failed to interact and provide an accommodation because the Plaintiff asserted that she would take legal action by filing with the EEOC and Equal Rights Division if her concerns were not properly addressed.

The Defendants Human Resource Business Partner James San informed the Plaintiff that he would spend more time investigating the matters contained in the statements and that they would meet within a week. Attached as Exhibit "F" is a true and correct copy of the Plaintiff written statements, which were provided to the Defendants Human Resource Business Partner James San.

Attached as Exhibit "G" is a true and correct copy of the Plaintiff written statements, which were also provided to the Equal Rights Division in July of 2019.

In or around July of 2019, the Plaintiff also informed the Defendant's employee/ Manager Cassandra that she recently made a complaint to HR and requested to not be stationed near Kimberly, Davina and Tayveion.

In or around July of 2019, the Plaintiff also informed the Defendant's employee/ Manager Cassandra that she recently made a complaint to HR and requested to not be stationed near Kimberly, Davina and Tayveion.

Although, the defendants policy outlines the accommodation process, the Plaintiff was denied a reasonable accommodation for a known disability because the Defendant failed to engage in the interactive process with the Plaintiff.

## Plaintiff Contacts Defendant Amazon's Human Resources Business Partner And Requests For an Accommodation Written & Verbally

In or around July/ August of 2019, Although the Defendants Human Resource Business Partner met with the Plaintiff two weeks later the Defendant continued to station the Plaintiff near the Harassers; although, she requested as an accommodation requests.

In or around July/ August of 2019, Human Resource Business Partner documented the follow up with questions on his laptop.

In or around July/ August of 2019, during this meeting Human resource Business Partner James asked Plaintiff what you meant by Amazon refused to reasonably accommodate you.

Plaintiff responds and informs Human Resource Business Partner that she requested for an accommodation to not be stationed near harassers.

Human Resource Business Partner James failed to engage in the interactive process; although, he was aware that the Plaintiff expected to be accommodated.

Human Resource Business partner James fails to follow up with the Plaintiff for accommodations.

### Plaintiff Treats Others Outside of Her Protected Class More Favorably October 2019

The Defendant provides an accommodation to others that are not disabled by stationing the associates on the opposite ends of the department.

### Plaintiff Requested Accommodations

The Plaintiff requested for accommodations such as:

Access to Music for mood changes,

To not be stationed near harassers( Plaintiff suffers from violent mood disorder)

Flexible Start and End Times, such as ability to work first shift on days where Plaintiff receives little to no sleep, which can trigger a manic episode. ( Flexible scheduling)

Additional Breaks

Plaintiff did not want to be reassigned to AFE2 in fear of further Sexual Harassment from John Doe Labor Shared Employee

The Plaintiff Accommodation Request were reasonable and would not have caused any undue hardship to the Defendant.

### Defendant Receives Amended Complaint Detailing Disability November 12th, 2019

In November of 2019, the Division mailed a copy of the amended complaint, which included Ms. Oliver ADA covered disability and the respondent was aware that the complainant was still employed and failed to engage in the interactive process w/ no accommodations provided.

### Count Three: TITLE VII ADA Interference Violation

## Plaintiff Visits Defendant Amazon's Human Resource Department- In Person And Requests For an Accommodation Written & Verbally November 22nd , 2019

On November 22nd, 2019, Ms. Oliver went directly to HR, and provided a written request from her physician for accommodations.

The HR rep provided Ms. Oliver with the same questionnaire that she completed in person for her Minor surgery accommodation on May 10th, 2019.

The HR rep provided the forms back to Ms. Oliver and stated that they wouldn't be able to accommodate her, and she had to go to Amcare.

Ms. Oliver informed the HR rep that she was wrong, and shortly after the HR Rep left the office to confirm what steps should she take regarding the Plaintiff accommodations by contacting Human Resource Business Partner Tyrell Townsend and concluded that Ms. Oliver had to go to Amcare and if she didn't she would not be accommodated.

## Plaintiff Contacts Defendant Amazon's Human Resources Business Partner And Requests For an Accommodation at Amcare Written & Verbally November 22nd , 2019

On November 22nd, 2019 Ms. Oliver went to Amcare after requesting for an accommodation with HR and waited for hours before being seen.

The Amcare associate provided Ms. Oliver with forms and stated that she specifically have to use the term accommodation in order to be accommodated and this fueled a disagreement between the two.

The Amcare associate stated the needs of the business comes first, and Ms. Oliver did not agree with her, so the Amcare associate proceeded to contact SR. Ops management Neil and HR Business Partner Tyrell Townsend.

Ms. Oliver stated that the accommodation wouldn't cause any undue hardship in costs operations, and both determined when you put it that way it makes sense.

Adam Dzibinski Ms. Oliver former supervisor stated that he would provide a replacement by an associate named Brandon, whenever she needed bathroom breaks, which didn't occur.

Adam Dzibinski stated that he would notify management including Ivonne.

All management and HR, who attended this meeting assured Ms. Oliver that she would be accommodated.

During this meeting the Amcare Associate instructed Ms. Oliver to sign a waiver of privledge, which she declined.

Ms. Oliver was offered VTO and went home after the meeting.

**PLAINTIFF PROVIDES HUMAN RESOURCE SPECIALIST WITH WRITTEN STATEMENT REGARDING NO FOLLOW UP FOR ACCOMMODATION**

In December 2020, Ms. Oliver provided Shannon Mcmillon with statements regarding refusal to accommodate and a copy of a current therapy appointment for PTSD and already in possession of the asking party.

Shannon Mcmillon stated that ray AKA Rykiel Rome would follow up with Ms. Oliver and Rykiel Rome never followed up. This occurred on the greenmile near the HR tower.

**WORKERS COMPENSATION DENIED**

Sedgwick handles claims on behalf of American Zurich Insurance Company.

On November 27th, 2019, the Plaintiff received a request from Sedgwick for authorization for Release of Medical information because the Plaintiff refused to sign prior release of information request.

The Plaintiff did not authorize Sedgwick, American Zurich Insurance Company, or Amazon authorization for the release of the Plaintiff's Medical information.

On December 3rd, 2019, Sedgwick Claims Management Services states that they have been unable to reach the Plaintiff regarding her claim.

The Plaintiff and the Defendant receives a determination from Sedgewick Workers Compensation that the claim had been denied due to no physical evidence presented to support that a physical work-related injury occurred; although, the Plaintiff never mentioned that the injury was physical but Mental and refused sign the release of medical information.

The Plaintiff Medical providers confirmed that Sedgwick, American Zurich insurance Company, and Amazon had not received access and were never provided with the Plaintiff Medical records.

**DEFENDANT RECEIVES SECOND CHARGE OF DISCRIMINATION CONTIANING ACCOMMODATION & AWARENESS OF DISABILITY**

In February of 2020, the Division mailed a copy of the complaint, which included the extent of Ms. Oliver ADA covered disability and methods of accommodations and the respondent was aware that the complainant was still employed and failed to engage in the interactive process w/ no accommodations provided.

**PLAINTIFF MEETS WITH POLICE DEPARTMENT AND DISCUSES DISABILITY WITH HUMAN RESOURCE BUSINESS PARTNER TYRELL TOWNSEND**

In March of 2020, Ms. Oliver attended a meeting with Loss prevention, HR Business Partner Tyrell and Four Local Police Officers where Ms. Oliver discussed the extent and permaniency of her medical conditions, and no interactive process was conducted after the respondent became aware of her medical conditions.

In April 2020, Ms. Oliver notified the ERC department by email of her medical condition and no interactive process or accommodation was granted thereafter.

## PLAINTIFF MEETS WITH HUMAN RESOUCE BUSINESS PARTNER RYKIEL ROME AND SHANNON MCMILLON REGARDING PERSONNEL FILE AND DISUCSSES DISABILITY

In April 2020, Ms. Oliver attended a meeting with Shannon Mcmillon and Rykiel Rome where Ms. Oliver explained retaliation, discrimination, and her medical conditions and neither Rykiel Rome or Shannon Mcmillon contacted Ms. Oliver to engage in the interactive process or discuss possible accommodations.

In May 2020, Ms. Oliver notified Tifashia Norplet of her medical condition and she did not mention any pending, or possible accommodations and no one employed by the respondent contacted Ms. Oliver to engage in the interactive process afterwards

In reality, the Defendant discriminated and retaliated against the Plaintiff because of her disability; they retaliated against her for engaging in federally protected activity and for requesting a reasonable workplace accommodation; they failed to participate in the interactive process at all, let alone in good faith; they interfered with her federally protected; and they summarily discriminated against her in the conditions of her employment under false pretense, all of which is in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq ("ADA"), and the

Wisconsin Fair Employment Act, ("WFEA"). Defendants conduct not only is egregious, but it is also against the law. Plaintiff accordingly brings this Complaint.

Despite this claim to work with its employees "to provide a reasonable accommodation" Defendant Amazon pretextually denied the Plaintiff's a reasonable accommodation that was provided to non-disabled employees when is suggested to a non-disabled employee that they would not station two employees, that were involved in a violent incident outside of work, near each other.

### Plaintiff Accommodation Was Medically Essential

The Defendant provided the Plaintiff's Accommodation request to others outside of the Plaintiffs protected class; although, it would not have created an undue hardship, or a health, or safety risks.

The Plaintiff works a physically demanding job, as A Fulfillment Associate with duties that consists of:

Amazon is seeking bright, hardworking individuals to fill Fulfillment Associate Positions at our Fulfillment center in ( Site HR- Add location). The ideal candidate possesses a strong work ethic, attention to detail, the ability to meet deadlines, and a commitment to customer service as it related to product fulfillment.

The Fulfillment Associate position may be required to receive products using radio frequency scanners, relocate products using forklifts, pallet jacks and walkie-riders. They also may also be required to pick customers' orders on all levels of a multi-level mezzanine, pack and ship

customers' orders, received product and troubleshoot problems to resolution. Fulfillment associates are expected to understand aspects of production and adhere to strict safety, quality and production standards. Dependent on business need, position may require for associate to be willing and able to work on powered equipment (i.e., forklift or cherry picker.)

**Work Environment**

- Work with and/ or around moving mechanical parts
- Noise level varies and can be loud
- Temperature in the fulfillment center may vary between 60 and 90 degrees, and will occasionally exceed 90 degrees
- Very fast-paced environment

**Additional Job Elements**

Demonstrates positive work attitude and leadership skill

Demonstrates excellent job performance in productivity, quality, safety, and attendance

Demonstrates a commitment to a culture of safety

**Basic Qualifications**

- Must be at least 18 years old
- Must have a high school diploma or equivalent
- Must be willing and able to work all shifts
- Must be willing and able to work overtime as required
- Must be able to read and take direction in English
- Must be able to lift up to 49 pounds with or without reasonable accommodation
- Must be able to stand/walk for up to 10-12 hours
- Must be willing and able to frequently push, pull, squat, bend, and reach

~ 26 ~

- Must be willing and able to continuously climb and descend stairs safely

- Must be able to work on a secure mezzanine at a height of up to 40 feet

- Must be willing and able to work on powered equipment-for example forklift or cherry picker

**Preferred Qualifications**

Computer experience

Excellent communication skills- able to coach, train and assist team members

Thinks outside of the box; searches for innovative solutions

Attached as Exhibit "G" is a true and correct copy of the Defendants Fulfillment Associate Job Description.

The Plaintiff expressed the need for accommodation based on the job requirements established by the defendant, which requires the Plaintiff to have a positive attitude, to have excellent job performance in productivity, quality, safety, and attendance, and stand and walk for up to 10-12 hours.

The Plaintiff medical record details that the Plaintiff anxiety/ panic attacks, affects the Plaintiff cardiovascular, with Tachycardia a fast heart rate, shortness of breath, and fainting, which essentially would affect the Plaintiff ability to work at a fast pace, job performance, safety and productivity.

The Plaintiff has medical record detailing a heart rate of 133-146 without exerting physical activity, which would create a safety issue if the Plaintiff were to exert strenuous activity during an anxiety/ panic attack due to Tachycardia potentially leading to stroke, heart attack and even death.

The Plaintiff was aware that a positive work attitude was a job element, which is why the Plaintiff requested that the Defendant prohibit the Plaintiff stationing near specific individuals.

The Plaintiff has a mood disorder and expressed to the Defendant in writing that the accommodation request of prohibiting the Plaintiff from stationing near specific individuals would be a peaceable solution and so that it would not resort to violence.

The Defendants actions disregarded that their continual scheduling near harassers was not conducive to the safety and health of the Plaintiff.

The Plaintiff medical records details, verbal aggression, threatens others, aggressive mood, mood disorder, violence, irritability, frustrated easily, and agitation which is why the Plaintiff requested for an accommodation.

Plaintiff was an excellent employee with positive reviews and no disciplinary history, until the Defendant discriminated and retaliated against the Plaintiff.

### Defendant Amazon's Bad Faith Regarding Accommodation

## DEFENDANT PROVIDES FALSE STATEMENTS REGARDING PLAINTIFF DISABILITY

Human Resources Rykiel Rome defames Plaintiff by CC the entire Human Resource Staff at MKE 1, that the Plaintiff had not been treated for any illnesses; although, the defendant was provided with documentation from the Plaintiff Medical Provider.

## DEFENDANT ALTERS PAST ACCOMMODATIONS RECORDS -BAD FAITH

Around March of 2020, the Plaintiff discovers that the Defendant altered a previous Leave of Absence to an Accommodation, for the purposes of litigation, which were false.

The Plaintiff was never accommodated for a minor surgery allowing her to work as the defendant altered, but she indeed was at home for two weeks while on a leave of absence.

The Defendant also attempted to state that the Plaintiff requested for an accommodation; although, said accommodations were denied based on inability to lift 50 with or without reasonable accommodations.

The Defendant altering a prior leave of absence paperwork to purport that she had been accommodated constitutes as bad faith regarding her accommodations listed within her complaint

In addition, the Defendant provided the same requested accommodations from the Plaintiff to white employees with disabilities such as Christopher Katisch and Kyle, which constitutes bad faith because the Defendant provided the same accommodations to other employees.

## DEFENDANT ATTORNEY DETERMINES ACCOMMODATION/DELAY

In or around July of 2020, the Plaintiff is provided with privileged information from the defendants attorney that the plaintiff could have accommodated the Plaintiff but because she engaged in protected activity- warranting an investigation conducted by the defendants counsel the defendant bad faith failed to provide such accommodations.

Such attorneys are aware of the laws regarding the ADA and delayed and failed to provide the accommodations because of protected activity.

This was an extremely stressful, anxiety-inducing, depressing and emotionally exhausting time for Plaintiff and her family.

The defendants treatment caused her great anxiety and mental health issues where she became diagnosed with PTSD.

This was an extremely stressful, anxiety-inducing, depressing and emotionally exhausting time for the Plaintiff.

### COUNT THREE

### SECTION 1981 & TITLE VII VIOLATION: RETALIATION

Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

**Plaintiff Experiences Tampering/ Theft of PPE (Personal Protection Equipment)**

In or around August/September of 2019, the Plaintiff experienced tampering/ loss of her personal protection equipment.

Amcare recommended that due to constant allergic reactions to the Defendants provided Personal Protection Equipment that the Plaintiff should buy and tryout, gloves that wouldn't give her a reaction.

Management as well as the harassers knew of the Plaintiff's inability to wear the company's PPE.

The Plaintiff along with many other coworkers would leave their gloves on their workstations during their 15-minute break.

The Plaintiff was stationed in direct proximity near her harassers and once she returned to her workstation, she noticed that only one of her gloves were missing.

She asked nearby coworkers if they had seen her PPE.

She went to Amcare to receive gloves, which later resulted in an allergic reaction.

Upon returning to her workstation coworker Hung found her stolen glove in an area located at the bottom chute where the SS(Large) boxes were about 3 walls away from her workstation.

Sharonda Jet mentioned to the Plaintiff that she thought that this was done on purpose.

The following day the Plaintiff informed the defendants manager Cassandra of the incident, regarding the tampering of her PPE.

Although, the defendant was aware of the safety concerns regarding the Plaintiffs health and safety there was no investigation into the tampering of the Plaintiffs PPE.

On February 07th, 2020, During a failed mediation, while still employed with the defendant she informed the Defendant that her PPE had been tampered.

The Plaintiff provided this email in writing, which had been delivered to the defendant and there was no investigation into the incident after they were made aware of the incident for the second time.

## Plaintiff Experiences Physical Abuse

On September 8th between 8:oo-10:00pm, I was packing on wall 17 when Demarius Pompy shoulder shoved the Plaintiff while walking past. Demarius demeanor towards the Plaintiff was rather aggressive that entire day.

The following shift Demarius was placed in direct proximity to the Plaintiff, which is the same behavior she experienced with other harassers.

On February 07th, 2020, During a failed mediation, while still employed with the defendant she informed the Defendant that she had experienced physical abuse.

The Plaintiff provided this email in writing, which had been delivered to the defendant and there was no investigation into the incident after they were made aware of the violent incident.

## Plaintiff Experiences Verbal Abuse

On October 5, 2019, The Plaintiff notified management about a faulty workstation.

When the issue persisted, a coworker shouted at the Plaintiff.

The Plaintiff requested to be assigned away from the coworker who verbally attacked her by shouting at the Plaintiff yelling, or what, what you going to do, which in my culture is interpreted to threats of violence.

PAGE 2/3 REC'D 11/29/201.9 3:46-19 PM [Central

Immediately after the Plaintiff had been verbally attacked by another fulfillment associate, similarly immediately after Alicia Reyes was verbally attacked by a fulfillment associate regarding faulty equipment.

The following day, the Plaintiff was assigned to work at the same faulty workstation.

Another coworker, Alicia Reyes, who had made a similar complaint about, a coworker yelling at her for the faulty workstation, was not similarly assigned to the faulty workstations again. The Plaintiff strongly believed the defendant assigned her to the faulty workstations in retaliation for her statutorily-protected activity.

### Plaintiff Experiences Faulty Equipment

Between October 2019 through the end of the Plaintiff she experienced faulty equipment at her workstations such faulty scanners for trays on conveyer belts, Jamming of trays, rebin walls that had electrical malfunctioning, which all were a safety concern and often led to verbal aggression from other fulfillment associates.

The Plaintiff strongly believes that she received faulty equipment because she was being retaliated against by engaging in protected activity by filing a complaint with the Equal Employment Opportunity Commission and the Equal Rights Division.

### Increased Scrutiny by Placing Plaintiff directly under Surveillance Cameras

The Defendant increased scrutiny by stationing the Plaintiff near the Mangers Tower and or directly under surveillance cameras, which managers have access to live feed.

The Plaintiff believed that the Defendant retaliated against her by increasing scrutiny because she engaged in protected activity.

## Defendant Reassigned Plaintiff Duties to Harder Job/ Increases Workload

The complainant filed a grievance report on July 16th, 2019, which is protected activity.

The Plaintiff suffered an adverse employment action, in the form of an involuntary job reassignment to a harder job, which increased her workload from a pack rate of 250 units per hour to rebin 680 units per hour and induct 1100 units per hour.

The defendant transferred the Plaintiff to a harder, dirtier job within the same pay grade as retaliation because she engaged in protected activity by filing a complaint.

The reassignment was geared toward retaliation rather than promotion because it provided the promotion to other associates with less experience and time on the job than the Plaintiff a promotion.

The Plaintiff was excluded for promotion opportunities, which were offered to newer associates outside of the Plaintiff's protected class, who were white.

If the respondent reassigned the complainant with the intent to promote the complainant, the respondent would have offered the complainant a promotion, which the complainant was excluded from.

The causal link between the Plaintiff protected activity on July 16th, 2019- August 2019 and adverse employment action by reassignment to Rebin & Induct was suspiciously close timing

between the Plaintiff protected activity and adverse employment action. (Job reassignment occurred only weeks after protected activity.)

## Defendant Assigns Plaintiff to Least Favorable Positions

The Defendant contributed to the punitive scheduling near those whom she had complained about concerning harassment, which contributed to the Plaintiff's triggering of PTSD, anxiety and Manic Episodes in retaliation of her engaging in protected activity.

The Defendant stationed the Plaintiff predominately only on end stations, or walls with low opportunities to meet productivity standards with complex orders and heavier items.

The acts, failures to act, and conduct of Defendants set forth above constitute retaliation against Plaintiff for exercising her rights under the TITLE VII.

Defendants retaliated against Plaintiff for engaging in protected activities.

Defendants, by and through their employees, retaliated against Plaintiff for having exercised is rights under federal and state law. Said violations were intentional and willful.

## Defendant Discriminates in Assignment/ Reduction of Force- Singles Department

The Defendant discriminated against the Plaintiff by reassigning her (demotion, reduction in force and assignment) to the Singles department after individuals began harassing the Plaintiff

Case 2:22-cv-00149-NJ   Filed 02/07/22   Page 35 of 69   Document 1

concerning her perceived sexual orientation, which consist of the similar work (packing), but less in rank due to a lower rate of 80 units per hour rather than AFE1 240 units per hour.

Human Resource Staff Member Shannon Mcmillon confirmed on audio during a meeting that the Plaintiff was involuntarily reassigned upstairs, which is the singles department.

### Defendant Failure to Train Plaintiff

The Defendant denied the Plaintiff the opportunity for training during the time she was labor shared to the singles department.

Other associates outside of the Plaintiff protected class were given training opportunities after being employed just after a month of being hired, which could have potentially excluded the Plaintiff from promotions.

## COUNT FOUR -SEX BASED DISCRIMINATION-SEXUAL HARASSMENT

NOW COMES the Plaintiff, JASMINE (hereinafter referred to as Plaintiff JASMINE) by and through pro se, and complaining of the Defendant, AMAZON.COM SERVICES LLC, states as follows:

### JURISDICTION AND VENUE

That this suit is brought, and jurisdiction lies pursuant to 28 U.S.C. §1337 and 1343(4) and 42 U.S.C §2000e-5(f). This is an action authorized and instituted pursuant to the Title VII of the Civil Rights Act of 1964;

That all acts of discrimination alleged herein were committed within the EASTERN District of Wisconsin and venue is proper within this District and Division pursuant to 42 U.S.C. §1211 ?(a) and 28 U.S.C. §1391;

## PARTIES

That Plaintiff Jasmine is a female resident of Milwaukee, State of Wisconsin, and at all times relevant to this complaint, was a resident of Milwaukee County, Wisconsin;

That at all times relevant in this complaint, Plaintiff Jasmine was an "employee" of Defendant Amazon within the meaning of Title VII;

That at all times relevant in this complaint, Defendant Amazon was an "employer" as that term is defined under Title VII;

## ADMINISTRATIVE PROCEDURES

That on or about June 5th, 2019, Plaintiff Jasmine timely filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission (hereinafter the "EEOC"), against Amazon. A copy of the charge is attached as Exhibit A and is incorporated herein ("Charge");

That said "Charge" alleged sex discrimination and sexual harassment committed by Amazon, including but not limited to unlawful employment practices based on Plaintiff's sex;

That on or about November 08, 2021, Plaintiff Jasmine received the "Dismissal and Notice of Rights" from the EEOC, entitling her to commence action within ninety (90) days of his receipt of the Notice, a copy of which is attached hereto and incorporated by reference as Exhibit B;

That the Complaint and Request for Jury Trial in this matter was filed within ninety (90) days of receipt of the EEOC's Notice of Right to Sue;

## FACTS COMMON TO ALL COUNTS

That Plaintiff began her employment with Defendant on November 08, 2018, as a Fulfillment Center Associate at the 3501 120th Ave Kenosha, WI Amazon Fulfillment Center( Amazon.com Services LLC, "MKE 1 "; December 22nd, 2015 Incident

Tommie, sexually harassed the Plaintiff by way of making advances towards the Plaintiff.

That in or around January 2020 while packing alongside Tommie, began sexually harassing, the Plaintiff for approximately 6 hours.

That in or around March 2020 Tommie, followed, the Plaintiff to the Locker Room.

In March 2020, Tommie referenced why he did not like Wisconsin compared to Illinois and he stated, " If I rape a white woman here they would just lock me up and I wouldn't get the same process as Illinois.

In March of 2020, Tommie made multiple advances towards Ms. Oliver by asking her to go to his car.

Tommie behavior became more and more aggressive as he threw a spu machine towards Ms. Oliver and stated, " I'm not bipolar I swear I don't have anger problems.

In March of 2020, Tommie began groping erogenous zones such as Ms. Oliver Lower back. Tommie then showed Ms. Oliver a shirtless nearly naked picture of himself on his phone.

In March of 2020, Tommie asked for a hug the entire time of sitting next to Ms. Oliver and she stated no multiple times.

He then stood over Ms. Oliver by use of intimidation and said you going give me one now.

In March of 2020, Tommie physically assaulted the Plaintiff and grabbed both of the Plaintiffs shoulders while walking back to AFE1, similar to shaking someone.

In March of 2020, Tommie commonly referred to Ms. Oliver as his wife even after having knowledge that Ms. Oliver was seeing another guy.

In March of 2020, Tommie began harassing the Plaintiff by attempting to discover what time she would be leaving.

On March 13th, 2020, the Plaintiff left her shift early and contacted the defendant's sexual harassment reporting hotline with her Sister.

On March of 2020, The Plaintiff informed the Defendants Hotline Representative, That the person who had engaged in inappropriate behavior, Name was Tommie as well as his position, which is a packer.

The Defendants Hotline representative requested the location where the incident occurred.

The Defendant was aware that the Plaintiff had be physically assaulted by Tommie and that the Plaintiff expected an investigation.

The Defendant has Surveillance covering nearly every aspect of the warehouse.

The Defendant was aware that the Harasser was a packer at 3501 120th Ave Kenosha, WI.

Although the Defendant warehouse is larger there are only three departments that packs, which is AFE1, AFE2, and the singles Department to assist with their investigation.

The Defendant has a photo ID database containing photographs and employee information.

On March of 2020 the Hotline representative assures the Plaintiff that they would investigate the incidents.

The Hotline representative provided the Plaintiff with an Incident Portal Follow Up Number, so that she could track the investigation and receive follow-up through the portal.

The Defendant utilizes EthicsPoint Incident Management regarding sexual harassment investigations reported by the hotline.

In March of 2020, Ms. Oliver notified the Kenosha Police Department, loss prevention, William Beamer, and Tyrell Townsend of the incidents surrounding harassment from Tommie, Kimberly, Davina, singles department employee and Tayveion. -Incident report has already been provided.

On March of 2020, Tyrell Townsend informs the Kenosha Police Department that human resource managers would be made aware of the Incident on Monday; although the Plaintiff had already reported the incident for investigation.

In March of 2020, Ms. Oliver spoke with a crisis line for nearly 40 minutes when HR failed to follow-up after the meeting with the police. -Proof of phone call has already been provided

In April 2020, Ms. Oliver notified the ERC by email that she wasn't sure if she was experiencing really bad anxiety symptoms due to the incident, or covid.

In April 2020, The Plaintiff is constructively Discharged and receives an Abandonment Termination email regarding the status of her employment.

In April 2020, William beamer, asked Ms. Oliver if she had received a follow up from HR concerning Tommie and if she had seen him.

## PLAINTIFF PROVIDES HUMAN RESOURCE SPECIALIST WITH STATEMENT REGARDING NO FOLLOW UP FOR SEXUAL HARASSMENT

In April 2020, Ms. Oliver provided Shae Mcmillon with statements saying that she hadn't received any follow up regarding harassment and even after receiving the statements there was no follow up.

Although, the Plaintiff did not inform EthicsPoint that she did not want an investigation, they failed to follow up and provide corrective action regarding the assault that occurred on company premises.

### Count FIVE: Title VII Violation- Hostile Work Environment Claim

That Defendant's Water Spider, Otis, witnessed that Jasmine was sexually harassed, stated to Joe Doe, "That's not a good thing"

John Doe, informed Otis, that he was not going to stop his advances towards to Plaintiff until she reports the incident/ restraining order.

John Doe was well aware of the reporting of Sexual Harassment and more than likely that he was in violation of the Defendants Policy.

The Plaintiff informed John Doe that she was not interested in being more than co-workers.

John Doe stated that he wanted to be more than that and said if you're not trying to get with me than its Fuck you then.

John Doe became aggressive and used Foul Language to express his frustration towards the Plaintiff for refusing to give into his advances.

That Plaintiff, later that week filed a complaint with her Human Resource Business Partner James San regarding the aforementioned comments made by John Doe;

The Defendants Human Resource Business Partner James San stated to the Plaintiff, well do you have his name immediately after James San had requested that the Plaintiff identify Human Resource Representatives whom she had discussed her prior complaint of harassment by utilizing the Defendants Photo ID database, commonly used for employee photos for their badge.

However, when she stated that she the name of the harasser was unknown just as the human resource representative, who she had just identified by photo from the defendant's photo Identification database, James San stated Lack of Information; although, he could have used the same photo identification database, so that the Plaintiff could have identified the Harasser.

James San stated I want you to feel safe I do but maybe if you had a name and refused to allow the Plaintiff to identify her harasser that admitted to the harassment and when he would stop.

Although James understood that John Doe had escalated his sexual harassment to Violence by aggression and foul language and that he would not stop unless she reported it the Defendant allowed a male associate to continue to sexually harassment another associate; although, it claims to prohibit sexual harassment.

Even after the Plaintiff reported the Sexual Harassment Incidents John Doe continued to sexually harass the Plaintiff, which subjected the Plaintiff to a hostile work environment.

That Defendant's failed to provide a safe work environment free from sexual harassment and failed to guarantee that the behavior demonstrated by John Doe was unacceptable by employees of the Defendant and that it would never happen again, which happened again with another male fulfillment associate.

### Defendant Admits of Taking No Action Regarding Sexual Harassment

On March 14th, 2020, Human Resource Manager, acknowledges and participates in a conversation regarding harassment and states, " I have spoken with Jasmine about issues with personnel in the past (surrounding the topic of sexual harassment). Attached as Exhibit "H" is a true and correct copy of the Kenosha Police Report.

## July 07th , 2019, Incident

That on July 4th, 2018, Plaintiff and other of Defendant's Davina Mcgrown were packing and Davina informed Plaintiff that there was a rumor that she's transgender.

That discussion concerning the Plaintiff perceived sexual orientation occurred among Davina, Kimberly and Tavion.

Plaintiff followed the Defendants Policy states,

" The majority of misunderstandings are satisfactorily resolved by a thorough discussion and mutual understanding between the parties involved," which is why the Plaintiff initiated a conversation concerning the defamatory stating about her perceived sexual orientation( transgender)

That discussion between Kimberly Nash and the Plaintiff also was concerning who informed Kimberly of the defamatory false statements, which was Tayveion Victorian;

The Defendants Policy states,

" Associates who observe, or experience inappropriate or harassing conduct in the workplace by anyone, including supervisors, coworkers, customers, or visitors, may advise the offender that their behavior is unwelcome and request that it stop,"

The discussion between Tayveion Victorian and the Plaintiff also was concerning who informed the defamatory false statements, which he denied.

In an effort to comply with the Defendants policy the Plaintiff, showed Tayveion her birth certificate to request that the harassment/ defamatory statements cease.

Although, Tayveion was aware that the Plaintiff was born female he continued to inform other associates that the Plaintiff was transgender.

The Plaintiff reports the incidents described above as harassment. Attached as Exhibit "I" is a true and correct copy of the Plaintiff reporting harassment.

The Plaintiff informed Human Resources again that she believed she was being "discriminated/ retaliated against" by Defendant Amazon and that the aforementioned incidents were repeatedly calling into question her sexual orientation;

On March 14th, 2020, Human Resource Business Partner, acknowledges and participates in a conversation regarding harassment based on Plaintiff perceived sexual orientation and states, " I

have spoken with Jasmine about issues with personnel in the past (surrounding the topic of harassment). Attached as Exhibit "H" is a true and correct copy of the Kenosha Police Report.

Plaintiff is informed by Human Resource Specialist Arielle, that she would be conducting an investigation and provided a form to formally document the Harassment/ investigation;

The Plaintiff returns to her department after the discussion regarding the reporting of harassment and informs management, Cassandra Lenard, that she just filed a complaint with HR and she does not want to be stationed near those involved Kimberly, Davina and Tayveion Victorian.

Davina Informs the Plaintiff that HR would investigate and interview all associates because that's what happened when she reported that Management and associates began discriminating and treating her differently after, she transitioned from identifying as Male to transgender (Female).

Jerry Cornett informed the Plaintiff that he was aware of the rumors and that if she wanted to talk he was there.

Associates began discussing the incidents revolving around the reporting of the Plaintiff perceived sexual orientation complaint.

On or around July 16th, 2019, Towards the end of the Plaintiff shift, Management Cassandra, states over the PA system, through the microphone, if anyone has any issues please come to management first before going to HR.

On July 16th, 17th towards the end of the Plaintiff shift, her manager Nathan Rhode, reassigns both associates near the Plaintiff.

The Plaintiff works alone for nearly 30- 45 minutes.

Towards the end of the shift Davina Mcgrown, signs into the station directly near the Plaintiff; although, she requested otherwise with Cassandra.

Cassandra informed the Plaintiff that she would ensure that they were separated.

Tayveion also, was reassigned to fill the Plaintiff boxes and stationed directly near her.

The defendant signs out of her station and clocks out for the remainder of her shift.

The next shift, the Plaintiff provided Human Resource Business Partner James San with written statements as described above regarding the Plaintiff disability accommodations.

Human Resource Business Partner James informs the Plaintiff that he would be taking over the investigation.

Human Resource Business Partner James conducts a follow-up meeting nearly two weeks later to further discuss the statements provided by the Plaintiff.

Human Resource Business Partner James informs the plaintiff that he may or may not follow up with her.

The Plaintiff informed Human Resource Business Partner James that she would proceed forward with filing a complaint with the EEOC.

That no further action was taken by the Defendant's investigation; and continued to place those whom she complained about near her.

The Plaintiff filed a complaint with the Equal Rights Division and cross filed a charge of discrimination with the EEOC- In July and August of 2019.

Prior to the start of the false statements regarding the Plaintiff perceived sexual orientation Management addressed the Plaintiff by her preferred name Jasmine; however, after the rumors and defamatory statements Management changed how they addressed her by only calling her Oliver, which is commonly known as a male first name.

Management only ever called one other individual by last name, which was Davina who is transgender.

Plaintiff never informed management that her preferred name was Oliver and did not consent to the change.

Kimberly Nash admitted to saying the aforementioned comments concerning the Plaintiff.

Davina admitted to saying the aforementioned comments concerning the Plaintiff.

That these incidents in July 2019 were continuous acts of sexual harassment and discrimination committed by Defendant Amazon against the Plaintiff;

That the Plaintiff is a heterosexual;

That by the conduct described hereinabove, the Defendant Amazon has willfully and intentionally, with malice or reckless disregard of the Plaintiff Jasmine rights as an employee, engaged in unlawful and discriminatory employment practices in sexually harassing Jasmine as decided in paragraphs 12-35 herein, after Jasmine was repeatedly being assured by his superiors in 2015 and again in 2018 that the aforementioned conduct described in paragraphs 12-35 herein was not acceptable behavior and would not be tolerated, all in violation of company policy and in violation of Title VII of the Civil Rights Act of 1964, as amended;

That as a direct and proximate cause of the facts alleged in paragraphs herein, the Defendant Amazon's workplace was and had become and remains a hostile work environment to Plaintiff, causing Plaintiff to remove himself from said workplace, fearing his own safety and mental health;

That as a direct and proximate result of the aforementioned wrongful and discriminatory practices performed by the Defendant Amazon, by and through its duly authorized agents, servants and or employees, Plaintiff Jasmine has suffered and continues to suffer lost wages, lost benefits and other pecuniary damages.

That as a direct and proximate result of the aforementioned wrongful and discriminatory practices performed by the Defendant Amazon, by and through its duly authorized agents, servants and or employees, Plaintiff Jasmine has experienced substantial damages for mental anguish, emotional distress, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT SIX: TITLE VII –

## VIOLATION OF SECTION 1981- RACE DISCRIMINATION

Plaintiff JASMINE OLIVER brings this action against the Amazon.com Services ("Amazon" or "Defendant") for violations of Section 1981, regarding race discrimination ("42 U.S.C. 1981"). In support of her Complaint, Jasmine alleges and states the following:

### JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1981 and 28 U.S.C. § 1331.

### ADMINISTRATIVE REMEDIES

The Plaintiff brings this action within the 4-year statute of limitations regarding section 1981 claims regarding intentional race discrimination and retaliation, which does not require an individual to exhaust any administrative remedies by filing a charge before any government agency.

## PLAINTIFF IS TERMINATED; ALTHOUGH, SIMILARLY SITUATED WHITE EMPLOYEES WERE NOT TERMINATED OR SUSPENDED PENDING INVESTIGATION

Tammy, a similarly situated white employee threatened and told another employee Jane Doe 1 to meet her at the gas station because she wanted to fight. "Imma beat yo Mother Fucking Ass."

Tammy wanted to fight Jane Doe 1 because she was flirting with her significant other.

Jane Doe 1 reports the incident to Human Resources that Tammy made threats of violence and scheduled a fight at the nearest gas station.

Human Resources informs Tammy that she should not repeat the conduct and issues a warning; although Tammy was currently on her last final warning; therefore, her employment was not in good standing.

Human Resources did not suspend Tammy pending an investigation; although, she admitted to making threats of violence, while at work.

Human Resources did not terminate Tammy; although, the defendant alleges to not tolerate violence, or threats of violence.

The Plaintiff was similarly situated as an African American Fulfillment associate and suspended and terminated because of race; since, Tammy being a white associate was not suspended pending an investigation and terminated.

Tammy struggled to maintain the defendants performance standards, which led her to being placed on a last final warning prior to being granted another warning for issuing threats of violence to another fulfillment associate.

The Plaintiff was similarly situated as an African American Fulfillment associate and suspended and terminated; although, her employment was in good standing and was not on her last final warning prior to the incidents on May 18th & May 23rd, 2020.

The defendant failed to consistently apply its policy because of the Plaintiff's race and because she engaged in protected activity.

## PLAINTIFF IS TERMINATED; ALTHOUGH, ANOTHER SIMILARLY SITUATED WHITE EMPLOYEE WERE NOT TERMINATED OR SUSPENDED PENDING INVESTIGATION

Rachel, a similarly situated white employee threatened and told another employee Kimberly Nash and attempted to fight one another while packing alongside each other.

Rachel and Kimberly both positioned each other to fight and stated " You know its about to get physical right"

The Defendant's Management staff Intervened and separated Kimberly and Rachel by placing each Fulfillment Associate at opposite ends of the department as far as 88 stations.

The Defendants management did not instruct either employee to report to Human Resources.

Human Resources and the Defendants management team did not suspend Kimberly nor Rachel pending an investigation; although, they admitted to making threats of violence, while at work.

The defendant tolerated violence, and threats of violence.

The Plaintiff was similarly situated as an African American Fulfillment associate and suspended and terminated because of race; since, Rachel being a white associate was not suspended pending an investigation and terminated.

## DEFENDANT FAILS TO COMPLY WITH WAIVER WITHIN CODE OF CONDUCT POLICY

Although the Defendants Code of Conduct contained a waiver and specifically states,
" Waivers to this code of conduct may be made only in a manner permitted by law."

Employees must follow applicable laws, rules, and regulations at all times, which includes Wisconsin's self-defense laws and harassment/ retaliation prohibited by employers; However, Plaintiff was still suspended after reporting the falsification of her personnel records, intentions of filing another ERD and EEOC complaint, harassment, and disability.

## INCIDENT REGARDING MAY 18TH, 2020

On May 18th , 2020, The complainant exited the department for her lunch break heading towards the exit near wall 22.

As the complainant quietly walked into the gift wrap department Marissa out of the blue began kicking and throwing her arms near the complainant and diverted near the side wall past the underway of the stairs by the gift wrap department.

The complainant confused as to why Marissa initiated this abrupt contact I assumed she was trying to fight me, which she later confirmed.

I asked her multiple times is there a problem, is there a problem, is there a problem and at no point did Marissa state that it was because of the six feet rule because we were more than 6 feet apart.

Marissa finally decided to speak and stated I feel like if you got something to say then say It and if you going to do something then do it.

As I walked on one side of the under passage of the stairs and Marissa on the other side near the wall of the Under passage of the stairs I told her I just said it.

The distance between Marissa and I was well over 6 feet given the size of the stairs, which can fit approximately 7 people horizontally on a single step.

Marissa and I did not exit the gift department walking closer than 6 feet and to the contrary I walked away towards the opposite direction screaming because of the distance between us two.

Marissa began stating meet me outside and began pointing her fingers towards the doors leading outside.

As I made it near the security towers I reported the incident to William and Ben Amazon's Security Guards that this constituted as harassment and a hostile environment and that I had ERD and EEOC complaints and I wanted the incident documented and reported.

I asked the security guards if they had seen what had occurred and they said well yea, I noticed that the security guards were not concerned with my safety or company policy, so I asked both to show me their badges, which contained their names.

Security watched the entire incident and did absolutely nothing, given that this was lunch time, Security Is required to be stationed near the security towers and metal detectors, which confirms that there was employees, who witnessed the incidents; however, neither security guard statements were taken into consideration as exculpatory evidence regarding both my suspension and termination.

Strange coincidence that the security guards, who witnessed that I reported harassment statements were never provided with my personnel file along with any other statements regarding that incident on May 18th, 2020.

In addition, the security cameras captured me reporting the incident of harassment and neither the footage corroborating this protecting activity and harassment was utilized prior to any disciplinary action.

I extended my lunch to avoid any additional altercations caused by my medical conditions and exited my vehicle and walked near the entrance.

Marissa was the only other associate nearby, which implied that she intended to harass and maintain contact with me, which in the state of Wisconsin is considered harassment.

She approached me and stated yea so what's up let's talk, I told her you did not have to do all of that you flipped out for no apparent reason girl I was minding my business, what was the issue?

She stated I felt like you could've walked around.

I laughed at her and said you're childish, girl these are my legs I'm grown as hell. I told her she was a child and how are you going to get mad at someone for the way that they're walking.

Marissa stated right in front of the security cameras, and we were near the turnstile yea I want to fight you, we can fight after work.

I told her yea that's fine and laughed at her. Security overheard me state that Marissa scheduled a fight with me after I made a report of harassment, and they did absolutely nothing again.

Marissa violated the 6 feet rule from in the parking lot, which is quite large and followed me through the parking lot, to the security tower, to the giftwrap department, to the employee station monitor, and to the gatekeep/ managers tower and not a single employee reported the incident of harassment.

## INCIDENT REGARDING MAY 23RD, 2020

On May 23rd , 2020, I reported an incident of harassment to William Beamer, where Marissa initiated abrupt contact with me yet again.

I reported to William that Marissa wanted to fight me because of the way that I was walking. William laughed and stated what because of the way you were walking.

I told him that Marissa told me that she wanted to fight me and attempted to schedule a fight with me May 18th , 2020.

William stated, "You can't be doing that Jasmine, but I know you don't let anyone FUCK with you."

I told William about my complaints and that I believed this harassment was connected to her friendship with them.

William said yea I know about the lawsuits I just received an email about it a while back ago.

On May 23rd , 2020, I reported the incident to Tifashia Norplet after I was given instructions by William to tell my side of the story.

I reported both incidents to Tifashia Norplet, the incident of harassment on May 18th , 2020, and May 23rd , 2020, which consisted of the described incidents above and below.

On May 23rd, I approached the employee station monitor and as I'm approaching the monitor I noticed that Marissa was kneeling and grabbing gloves.

The gloves and employee monitor is stationed across from the pick department and past the gift wrap department.

I provide my own gloves due to allergic reactions to the gloves provided by amazon.

I had seen Marissa and refused to acknowledge her presence and began looking for my station.

Marissa; however, initiated contact with me by stating I wanted to fight you where were you we were supposed to fight what happened.

I then proceeded to defend myself, which is a common symptom of someone with my medical condition.

I told Marissa to do it then, and that she scheduled a fight with me. Everyone overheard me repeatedly say that Marissa Scheduled a fight with me.

A white male who was a friend of the family, grabbed me and said stop Jasmine she's not worth it.

I told him to get the Fuck off me.

As I reported the harassment to Tifashia where she attempted to get me to write a statement and I informed her that I would not be provided a statement because my personnel records were falsified.

As I reported the harassment I informed Tifashia the HR specialist that Marissa harassed me, and I reported the harassment to William and Ben and Chris Katich the water spider witnessed that I reported harassment.

I informed Tifashia that this was self-defense and that I had every right to defend myself.

I complied with policy by informing Tifashia of a self-defense law, which was a summary of the Wisconsin Self-Defense statute, which states that a person is privileged to threaten, or intentionally use force against another for the purpose of preventing, or terminating what the PERSON reasonably believes to be an unlawful interference.

I think the casual HR specialist would think that violence is an automatic reason for suspension and termination but to my surprise Amazon Code of Business Conduct and ethics, which includes the violence policy specifically states that the code of conduct may be waived only in a manner permitted by law.

As I reported the harassment Tifashia stepped out of the room for a period, my guess is to call possibly legal counsel and returned to suspend me and later terminated me on the same day that

the investigator required a response by June 18th , 2020, which consisted of protected participation with the ERD and EEOC investigation.

The only individuals who would have known that my responses were due on June 18th , 2020, would be Amazon Counsel.

Although the code of conduct contained a waiver and specifically stated Employees must follow applicable laws, rules, and regulations at all times, which includes self-defense laws and harassment/ retaliation prohibited by employers I was still suspended after reporting the falsification of my personnel records, intentions of filing another ERD and EEOC complaint, harassment, and disability.

On May 23rd William Beamer informs the Plaintiff that she needs to visit HR so that she can tell her side of things.

### THE DEFENDANT FAILS TO CONDUCT UNBIASED INVESTIGATION

The Plaintiff Termination was conducted by the Human Resource Rep, who was accused of retaliating against the Plaintiff because she stated she has PTSD.

The Defendant should have followed their policy by investigating the Plaintiffs complaint of retaliation by Tifashia Norphlet and reassigning another HR Rep to conduct an unbiased investigation.

The Defendant claimed to have conducted a through investigation; however, when the plaintiff filed a personnel record complaint and she was provided with her personnel records she

discovered that Tifashia had only allegedly interviewed 4 people; although, the department had well over 200 employees who had witnessed the incidents.

### THE PLAINTIFF FINDS OUT SHE IS TERMINATED

On June 18 at 4:29 Jasmine the complainant missed a call from the Human Resource Rep responsible for investigating the incidents, Tiphasia Norphlet

On June 18th, 2020, several hours later Tiphasia sent an email at 7:47 PM which states,

Hello Jasmine Oliver,

I tried to reach out to you by phone but was unable to connect with you. After careful review, you were found to be in violation of workplace rules and policy. Due to this, you will not be eligible for rehire at Amazon. Your benefits will last until the end of this month and your vacation will be paid out to you on your final check which will be Friday, June 26th.

We appreciate your time with Amazon and wish you the best in your future endeavors.

### DEFEDANT PROVIDES A SECOND TERMINATION NOTICE PURPOTED AT A DIFFERENT DATE ON JUNE 20TH, 2020.

Moreover, the Plaintiff received a second Termination Letter from Defendant, which was stated that the Plaintiff termination date, not effective date, was June 19th, 2020.

The Plaintiff did not receive the second termination letter until AFTER the date stated on her second termination letter, which was provided on June 20th, 2020, with a termination date of June 19th, 2020.

The plaintiff had been terminated the same day that the States Equal Rights Division investigating her complaint due date regarding a response, June 18th, 2020.

The close and suspicious timing led the Plaintiff to believe that because she was terminated the same day that her ERD response was due that she was being retaliated against for engaging in protected activity by participating in an investigation regarding discrimination.

Defendant Amazon explained that Tifashia based her decision on a review of surveillance videos; However, Tifashia never confirmed or interviewed the security guards who she filed a grievance with regarding the harassment and threats from Marissa on May 18th, 2020. Additionally, upon information and belief, there are surveillance cameras near the tower where the complaint took place.

Tifashia also failed to contact/ interview and retrieve a written statement from the Water Spider who witnessed the Plaintiff reporting the violence from Marissa on May 18th, 2020.

It is evident that the alleged investigations into the May 18th, 2020 and May 23rd, 2020 incidents were biased and the Defendant failed to conduct a thorough investigation.

Plaintiff's termination was pretextual and in retaliation for taking participating in an investigation and requesting an ADA accommodation.

Plaintiff was never interviewed by any other human resources representative regarding the incidents.

Case 2:22-cv-00149-NJ   Filed 02/07/22   Page 64 of 69   Document 1

Even though HR Tifashia alleges she reviewed surveillance videos and that the videos failed to show Plaintiff version of events, she failed to realize that the photo captured from the surveillance, showed that the Plaintiff was more than 6 feet apart from Marissa.

Therefore, the photo that captures the Plaintiff and Marissa Dyess confirms that the B9 box, stationed in the photo is and wall measures more than six feet and that Marissa version of events regarding the 6 feet rule were false.

Tifashia also failed to investigate further than Marissa, and she would have been made aware that the Plaintiff did not walk directly up to Marissa while getting her gloves because the Plaintiff is allergic to the Defendants provided gloves; therefore, she would have gone directly to the monitor which is stationed nearby.

Marissa provided false statements to the defendant, which should have resulted in her termination because she threatened the plaintiff in front of surveillance.


Moreover, Tifashia should have heard that the Plaintiff never issued a direct threat to Marissa on May 23rd, 2020, because she repeatedly stated on surveillance that Marissa Scheduled a Fight with her and to do it now then.


## THE DEFENDANT ATTEMPTS RE-EMPLOY THE PLAINTIFF BY APPEALING CORRECTIVE ACTION

The Defendant sent the Plaintiff an appeal regarding the corrective action on June 19th, 2020; although, the violence terminations can not be appealed.

### Defendant Failure to Promote Plaintiff Based On Race

The Defendant Policy Outlines that there is two types of promotions that employees are able to receive with the defendant.

The Defendants policy states:

" At Amazon, we have two types of promotions: Career Development and Open position. A Career Development Promotion occurs when there is an increase in an associate currently job level within the same job family( For example, a move from Financial Analyst to a Sr. Financial Analyst.)

The Defendant provided the promotions to other associates with less experience and time on the job than the Plaintiff because of race.

The Plaintiff assisted with coaching and provided assistance to new associates when needed; however, the Plaintiff was excluded from promoted.

The Plaintiff was excluded for promotion opportunities, which were offered to newer associates outside of the Plaintiff's protected class, who were white.

The Defendant promoted other associates outside of the Plaintiff protected class such as Bri McIntosh, who is white and was promoted to Problem Solve and eventually a Process assistant.

The Defendant promoted other associates outside of the Plaintiff protected class such as Jay Allen, who is also white and promoted to Problem Solve.

The Defendant promoted other associates outside of the Plaintiff protected class such as Brandon Helmer, who is also white and promoted to Problem Solve.

The Defendant promoted other associates outside of the Plaintiff protected class such as Danny Lupton, who is also white and promoted to Problem Solve.

The Defendant promoted other associates outside of the Plaintiff protected class such as Kristal Roe, who is also white and promoted.

The Defendant promoted other associates outside of the Plaintiff protected class such as Jay Allen, who is also white and promoted to Problem Solve.

The Defendant promoted other associates outside of the Plaintiff protected class such as Elizabeth Peterson, who is also not African American and promoted.

If the Defendant reassigned the complainant to rebin and induct with the intent to promote the complainant, the defendant would have offered the complainant a promotion, which the complainant was excluded from because of race.

## Count SEVEN

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

That the aforementioned conduct described in paragraphs herein, committed by Defendant Amazon, were extreme, outrageous and intentional;

That Defendant Amazon, by and through its agents, servants and/or employees intended to inflict severe distress on Jasmine and/or knew that their conduct would have a high probability of causing severe distress to Jasmine; by intentionally stationing her near those who had harassed her although, they were aware that it triggered her disability.

That as a result of the aforementioned conduct by Amazon, by and through its agents, servants and/or employees, Jasmine suffered severe distress, including but not limited to PTSD, depression, anxiety, panic attacks, sleeplessness and other psychological and physiological ailments and infirmities.

**WHEREFORE, the Plaintiff, Jasmine, requests the judgment of this**

**Court against the Defendant, Amazon, as follows:**

As a result of Defendants' discriminatory and retaliatory actions, Plaintiff has

suffered severe emotional distress, including, but not limited to, stress, anxiety, mental anguish , suicidal thoughts, a new diagnosis of PTSD based on their actions, dysfunction and sleeplessness. The Plaintiff reputation has suffered as a result of the Defendant actions, which led to the Plaintiff manic episode witnessed by her peers and by video, and such humility should be recompensed because it could have been avoided if the Defendant had accommodated her. Additionally, Plaintiff has suffered physical issues, including heart issues, cholesterol problems caused by stress.

Defendant Amazon at all times relevant hereto, employs fifty (300,000) or more employees.

Defendant Amazon, wrongfully discharged Plaintiff in retaliation for Plaintiff participating in protected activity.

Said violations were intentional and willful.

WHEREFORE, Plaintiff, respectfully demands judgment in her favor and against

Defendant, and seeks all appropriate remedies under the Title VII and damages under Section 1981

including compensatory and punitive damages, declaratory and injunctive relief,

interest, front pay, back pay, costs (including expert witness fees), liquidated damages, negative tax consequence

damages, front pay and such other relief as the Jury shall deem appropriate, with Amount to be determined by a jury.

SIGNED,

JASMINE OLIVER