# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JASMINE OLIVER,

    Plaintiff,

 v.                                                                              Case No.    22-CV-149

AMAZON.COM SERVICES, LLC,

    Defendant.

## DECISION AND ORDER ON PLAINTIFF'S SPOLIATION MOTION AND MOTION FOR SANCTIONS

Jasmine Oliver, who is representing herself, sues her former employer, Amazon.com Services, LLC, alleging failure to accommodate and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112, *et seq.*; discrimination based on sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and discrimination based on race in violation of 42 U.S.C. § 1981.

Several on-going discovery disputes between the parties remain unresolved and Oliver now brings a motion requesting sanctions for Amazon's alleged failure to comply with this Court's order to compel production of discovery and for spoliation sanctions based on Amazon's alleged destruction of surveillance video and job applications that Oliver contends are vital to proving her case. For the reasons further explained below, Oliver's motion is denied.

## FACTUAL BACKGROUND

Oliver alleges that she was employed at Amazon from November 2018 through June 18, 2020 as a full-time Fulfillment Associate and as a packer within AFE 1, an

organizational division of Amazon. (Compl., Docket # 1 at 2–3.) Oliver alleges that she has multiple disabilities under the ADA, including anxiety, panic attacks, depression, and tachycardia. (*Id.* at 5.) She alleges that while employed at the Fulfillment Center, she experienced harassment from co-workers regarding her perceived sexual orientation. (*Id.* at 2–3, 14–19.) Oliver alleges that the harassment triggered her mental health conditions and she sought accommodations from Amazon to address her health concerns, including separation from the harassing co-workers. (*Id.* at 2–3, 19.) Oliver alleges that Amazon refused to provide a reasonable accommodation for her disabilities. (*Id.* at 2–3.)

Oliver further alleges that Amazon retaliated against her for asserting her rights under the law, including by reassigning her job duties. (*Id.* at 7.) Oliver also asserts that she was discriminated against based on sex in violation of Title VII. (*Id.* at 36–51.) She specifically asserts that she was sexually harassed by a co-worker and despite reporting the harassment to Amazon, Amazon did nothing to follow-up on the charge. (*Id.*) Finally, Oliver alleges that she was discriminated against due to her race in violation of § 1981. (*Id.* at 51–67.) Oliver asserts that she was ultimately "forced off the job" by Amazon in June 2020. (*Id.*)

## DISCOVERY DISPUTES

In early November 2022, Amazon filed a motion to compel Oliver's response to multiple discovery requests. (Docket # 25.) Oliver objected to Amazon's motion and asserted that Amazon's responses to Oliver's discovery requests were deficient. (Docket # 28.) I held a conference with the parties on November 10, 2022 in which both parties attempted to clarify their requests. (Docket # 29.) Oliver initially raised issues regarding her

request for video recordings, to which I told the parties they may request another status conference to address the videos or any other discovery issues. (*Id.*)

On November 17, 2022, Oliver filed a motion to compel, asserting that while she attempted to confer with Amazon regarding outstanding discovery, Amazon continued to fail to completely respond to her Interrogatories Nos. 1, 2, 5, 6–9, and 11–21. (Docket # 30.) Oliver further argued that Amazon failed to provide information responsive to her document requests, including discovery regarding surveillance videos that Oliver argued were relevant to her claims. (*Id.* at 3.) Amazon opposed the motion (Docket # 31), and I ordered the parties to meet and confer regarding this dispute and provide the Court with an update as to any outstanding issues by December 16, 2022 (Docket # 32). On December 16, 2022, Amazon provided the Court with an update explaining that the parties conferred for approximately two and a half hours, but continued to have disputes regarding several matters. (Docket # 35.)

I held another conference with the parties on December 20, 2022. (Docket # 36.) I ordered the parties to continue to confer regarding the issues that were raised at the hearing that had not been previously discussed by the parties. (*Id.*) Also discussed at length during this hearing was Oliver's request for surveillance video. Amazon represented that it has over 1,000 security cameras in its large Kenosha warehouse facility and that it believed Oliver was requesting footage for every day she worked during her nearly two-year employment with Amazon. Oliver clarified that she had narrowed down the footage request to specific days. Amazon confirmed on the record, however, that pursuant to its file retention policy, video is deleted after fourteen days. Thus, any and all video from the relevant time period that Oliver requests is now gone.

3

Oliver moves for sanctions regarding Amazon's alleged continued failure to respond to her discovery requests and for spoliation sanctions for Amazon's deletion of the surveillance video and for allegedly deleting her candidate profile with job applications. (Docket # 37.)

## ANALYSIS

In her motion, Oliver argues for sanctions due to Amazon's alleged continued failure to respond to discovery requests and for spoliation sanctions due to Amazon's deletion of the surveillance video and candidate portal. I will address each in turn.

1. *Sanctions for Failure to Respond to Discovery Requests*

During the December 2022 hearing, Amazon was ordered to produce certain documents and the parties were ordered to continue to confer on issues that were raised at the hearing that had not been previously discussed by the parties. (Docket # 36.) Amazon contends that it provided supplemental responses as ordered on January 23, 2023; however, counsel requested Oliver clarify the issues she wished to further discuss before the parties scheduled another meet and confer. (Docket # 38 at 1.) Amazon contends that Oliver refused to clarify the issues, instead threatening to file this present motion. (*Id.* at 2.) Otherwise, Oliver asserts that Amazon has stated that it stands by its previous objections and answers. (Docket # 37 at 1–2.)

It is unclear from Oliver's motion how she contends Amazon's discovery responses continue to be insufficient. Is she asserting that the supplemental responses Amazon provided in January 2023 remain faulty? Or is her argument related to the additional issues she raised at the December 2022 hearing but the parties had not yet discussed and were

unable to meet and confer on because, at least from Amazon's perspective, Oliver refused to delineate the issues?

Although it is not entirely clear, it appears that Oliver's request for sanctions is based on Amazon's alleged failure to comply with this Court's December 2022 order granting her motion to compel. Thus, Oliver must contend that the January 2023 supplemental responses are still defective. But I am unclear from Oliver's motion just how, exactly, the responses are defective. Oliver asserts that Amazon has, among other things, (1) not provided the contact information of even one individual with knowledge of her claims; (2) provided no documents that were created during Amazon's human resources department's investigation of the claims; and (3) provided only four employee statements from the investigation. (*Id.* at 3, 12.) But Oliver also contends that Amazon only produced four employee statements and she believes there must be more because Amazon "interviewed every employee." (*Id.* at 12.) Thus, if Amazon did produce, for example, four employee statements, it cannot be that Amazon provided *no* documents created during its internal investigation of Oliver's claims as she asserts.

Rather, it appears that Amazon has responded to Oliver's discovery requests, however, she is dissatisfied or otherwise disagrees with the response. For example, Oliver argues that Amazon still has not identified the identities of management staff who scheduled Oliver to work near those employees who allegedly harassed her. (Docket # 41 at 7.) Amazon contends that work assignments are chosen at random and supervisors are not aware of who is paired with who on a given day. (Docket # 28-1 at 63.) During the December 2022 hearing, counsel represented that he would double-check with Amazon as to whether there is a specific person who makes the random assignments. Given Oliver's

5

statement that Amazon rests on its previous responses, it appears Amazon does not have the names of the specific person, if any. Thus, as Oliver was told during the December 2022 hearing, even if she has evidence she alleges contradicts Amazon's response, that does not mean the response is deficient. For these reasons, to the extent Oliver requests sanctions for Amazon's alleged failure to comply with the Court's December 2022 Order granting her motion to compel, Oliver's sanctions motion is denied.

    *2.*    *Motion for Spoliation Sanctions*

Oliver contends that Amazon spoliated two categories of evidence in its control: (1) the surveillance footage from its Kenosha warehouse and (2) applications she submitted for jobs at Amazon. (Docket # 37.) I will address each in turn.

    *2.1*    *Surveillance Footage*

Oliver sought production of surveillance footage taken from security cameras installed throughout Amazon's Kenosha warehouse. Oliver narrowed her request to specific days and times, arguing that the cameras captured her ADA accommodation requests, sexual harassment, threats of violence towards her, physical violence enacted on her, verbal harassment, and sexual misconduct. (Docket # 30 at 3.) Oliver contends that the videos would show, for example, another associate groping her. (*Id.*) Amazon does not dispute that security footage existed; however, Amazon contends that the footage was deleted in accordance with Amazon's regular retention policies, whereby footage is deleted within fourteen days. (Docket # 38 at 8.) Thus, Oliver's ability to narrow the scope of her request is irrelevant; Amazon has represented that the footage no longer exists.

Fed. R. Civ. P. 37(e) provides the sole source to address the loss of relevant electronically stored information, or ESI, that was required to be preserved but was not

because reasonable steps were not taken, resulting in prejudice to the opposing party. *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 617 (N.D. Ill. 2022). Rule 37(e) has five threshold requirements: (1) the information must be ESI; (2) there must have been anticipated or actual litigation that triggers the duty to preserve ESI; (3) the relevant ESI should have been preserved at the time the litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery. *Id.* If any of these requirements are not met, then curative measures and sanctions are unavailable under Rule 37(e). *Id.*

### 2.1.1 Threshold Requirements Under Rule 37(e)

As to the first and fifth threshold requirements, Amazon does not contend that the surveillance video was not ESI, nor does it contend that the lost ESI could be restored or replaced through additional discovery. Nor could it, video has been found to be a form of ESI., *id.* at 618, and Rule 37(e)'s requirement that ESI "cannot be restored or replaced through additional discovery" refers to digital backups and the likelihood that electronic documents have multiple versions, *Freidig v. Target Corp.*, 329 F.R.D. 199, 208 (W.D. Wis. 2018). Amazon has not stated that it keeps backup versions of its surveillance video. Amazon argues, however, that Oliver cannot show that Amazon had a duty to preserve the ESI, that the ESI was relevant, or that the ESI was lost because Amazon failed to take reasonable steps to preserve it.

As to the duty to preserve, this duty under Rule 37(e) is based on the common law, and so is triggered when litigation is commenced or reasonably anticipated. *Hollis*, 603 F. Supp. 3d 611 at 619. This means that the duty to preserve can arise before litigation is filed.

7

*Id.* The scope of the duty to preserve includes ESI that is expected to be relevant and proportional to the claims or defenses in the litigation. *Id.* Amazon argues that Oliver "has failed to meet her burden of showing that the thousands of hours of footage she seeks is relevant to the allegations made in her Complaint nor that Amazon had notice that it was." (Docket # 38 at 6.)

But Oliver testified that as early as July 2019, she complained to Amazon of sexual harassment based on her perceived status as transgender. (Declaration of Casey M. Kaiser ("Kaiser Decl.") ¶ 3, Ex. A, Deposition of Jasmine Oliver ("Oliver Dep.") at 71–73, Docket # 53-1.) Oliver filed a discrimination complaint with the Wisconsin Equal Rights Division ("ERD") and the Equal Employment Opportunity Commission ("EEOC") on August 28, 2019, asserting discrimination based on sex, specifically perceived transsexual. (Kaiser Decl. ¶ 4, Ex. B, Docket # 53-2.) Oliver also filed an amended discrimination charge with the ERD on November 1, 2019, alleging discrimination based on sex (female) and disability (anxiety disorder). (Kaiser Decl. ¶ 5, Ex. C, Docket # 53-3.) Oliver provided Amazon a request for accommodation form dated November 22, 2019, requesting accommodation based on anxiety and PTSD. (Ex. 4 to Oliver Dep., Docket # 53-1.) And Oliver filed two additional charges with the ERD on January 24, 2020 and June 19, 2020. (Kaiser Decl. ¶¶ 6–7, Exs. D, E.) Given Oliver's multiple complaints to Amazon of discrimination and harassment, coupled with the multiple charges of discrimination filed with the ERD, it is difficult for Amazon to claim it was ignorant of the potential for litigation based on these allegations.

Furthermore, Oliver alerted Amazon that these incidents allegedly occurred on the warehouse floor while she was working. Amazon was aware of the security cameras

8
Case 2:22-cv-00149-NJ   Filed 05/08/23   Page 8 of 15   Document 60

throughout its facility that captured footage of employees interacting on the warehouse floor, and Amazon was aware that Oliver's allegations included incidents occurring on the warehouse floor during her shifts. Thus, Amazon's duty to preserve this video was triggered by at least August 28, 2019, with the filing of her ERD claim.

Amazon asserts, however, that it has many video cameras recording the entirety of its large warehouse twenty-four hours a day and it could not be expected to preserve the thousands of hours of footage these create. (Docket # 38 at 6.) I agree. Again, the scope of the duty to preserve includes ESI that is expected to be relevant and proportional to the claims or defenses in the litigation. *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 978 (N.D. Ill. 2021). Clearly preservation of video footage for the entire facility, running twenty-four hours a day from October 2019 through June 2020 would be neither relevant nor proportional to the parties' claims and defenses in this case. What would have been proportional and relevant, however, was retaining video footage for the hours in which Oliver worked and for those specific areas in which she worked.

One striking example encapsulates Amazon's duty in this regard. Oliver was terminated from her employment effective June 19, 2020 based on an alleged physical altercation between Oliver and a colleague on the warehouse floor on May 23, 2020. Amazon's Human Resources Department investigated this incident, including watching surveillance footage of the altercation. (Declaration of Tifashia Norphlet ("Norphlet Decl.") ¶ 15.) Amazon kept a screen shot from the video footage, which it has now included in support of its pending summary judgment submissions. (*Id.*, Ex. F.) During the Court's December 2022 conference, Amazon's counsel conceded that if footage of the altercation was available, it should be turned over to Oliver. Amazon contends, however, that the

footage was "deleted during regular file clean-up." (Norphlet Decl. ¶ 15.) Amazon was clearly aware of the significance and relevance of this video, as it is relying on it, at least in part, in moving for summary judgment. Even if Amazon contends that it had no duty to preserve the entirety of the video capturing Oliver's alleged incidents of discrimination and harassment, it cannot reasonably argue that it had no duty to preserve the video of the altercation leading to the termination of an employee with multiple ERD complaints for discrimination.

Amazon does not specifically address whether the ESI was lost because it failed to take reasonable steps to preserve it, simply arguing that it has an automatic retention policy where footage is deleted within fourteen days. (Docket # 38 at 8.) But Amazon makes no showing whatsoever that it took *any* steps to preserve the security footage, even after the May 23, 2020 altercation leading to Oliver's termination. Thus, I find the ESI was lost because Amazon failed to take reasonable steps to preserve it. *See Hollis*, 603 F. Supp. 3d at 621–22.

### 2.1.2 Sanctions for Failure to Preserve ESI

Once the threshold requirements of Rule 37(e) are met, Rule 37(e)(1) and (2) provides the following remedies:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Starting with Rule 37(e)(1), Oliver argues that she suffered "incurable prejudice" due to the destruction of the surveillance video. (Docket # 37 at 11–12.) Oliver argues that witness testimony is an insufficient substitute for the surveillance video. (*Id.* at 13.) "Establishing prejudice can be a dicey proposition because the ESI is gone." *Hollis*, 603 F. Supp. 3d at 623. Thus, "courts evaluate prejudice in the context of determining the harm inflicted by the non-existence of relevant information, an undertaking different and more challenging than the general concept of prejudice in different contexts under Rule 37." *Id.* "The process can be challenging in at least two ways: (1) marshalling the evidence to show harm because of the absence of evidence, and (2) determining which party bears the burden of proof to show prejudice. Because of these difficulties, the rule gives the court discretion as to how to best determine prejudice." *Id.*

I agree with Oliver's general proposition that witness testimony is often an insufficient substitute for video. For example, if Oliver has one version of events surrounding the altercation leading to her termination, and other witnesses have a different version of events, the surveillance video could resolve the question by showing what happened in real time. While Oliver generally argues that the surveillance video will confirm all of the allegations in her complaint, it is unclear to me how. For example, does the video show her turning in her request for an ADA accommodation? The lack of specificity makes it unclear to me the superiority of this surveillance footage over document and witness testimony that does exist.

Even so, Rule 37(e)(2) provides that the Court may order measures no greater than necessary to cure the prejudice. Oliver requests as a sanction an adverse inference, that

Amazon be prohibited from raising certain defenses, and that Oliver's claims be found as having been established. (Docket # 37 at 1, 16.) But given the availability of alternate evidence, any prejudice Oliver experiences does not warrant the sanctions she requests.

What Oliver seems to request is sanctions under Rule 37(e)(2). As stated above, sanctions under Rule 27(e)(2) require a finding that Amazon acted with intent to deprive Oliver of the information's use in litigation. Amazon argues that even if it should have preserved the surveillance video at issue, Oliver has not shown that Amazon deleted the footage with the intent to deprive her of its use in litigation. (Docket # 38 at 7.) Rather, Amazon argues that the footage was deleted in accordance with Amazon's regular retention policy of fourteen days. (*Id.* at 7–8.)

"An employer's destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse to the employer's case." *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002). Rather, "to draw such an inference, the employer must have destroyed the documents in bad faith." *Id.* A party destroys a document in bad faith when it does so "for the purpose of hiding adverse information." *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) (internal quotation and citation omitted). Thus, the "crucial element" is "not that evidence was destroyed but rather the reason for the destruction." *Park*, 297 F.3d at 615 (internal quotation and citation omitted).

Oliver has failed to show that Amazon deleted the surveillance footage in bad faith. The crux of Oliver's argument is that Amazon knew it had a duty to preserve evidence when she filed her EEOC complaint, as the ERD and EEOC complaints notify Amazon of its duty to preserve evidence. (Docket # 37 at 9.) She argues that the Court should grant her

motion based on 29 C.F.R. § 1602.14, which requires an employer to preserve personnel records relevant to a formal charge of discrimination until final disposition of the charge or legal action. (*Id.* at 10.) While the Seventh Circuit has found that "a violation of a record retention regulation creates a presumption that the missing record[s] contained evidence adverse to the violator"; the court has also "intimated that, absent bad faith, a violation of 29 C.F.R. § 1602.14, the EEOC record retention regulation, would not automatically trigger an adverse inference." *Park*, 297 F.3d at 615 (internal quotation and citation omitted). In other words, even if Amazon failed to comply with 29 C.F.R. § 1602.14, this does not show bad faith.

Oliver further argues that Amazon is able to preserve surveillance when it benefits Amazon, citing a case involving an employee who was accused of stealing items from the warehouse and Amazon's production of surveillance footage in support of its case against this employee. (*Id.* at 13.) While Oliver's point is well-taken, proof that Amazon knows how to retain footage when it benefits it does not prove that in this case, Amazon destroyed the surveillance video to deprive Oliver of the information. Thus, while Amazon should have preserved the surveillance video, Oliver has not shown that Amazon acted in bad faith so as to justify sanctions under Rule 37(e)(2). For these reasons, Oliver's spoliation motion as to the surveillance video is denied.

### 2.2 Job Applications

Oliver also argues that after including a race discrimination claim for failure to promote under § 1981, Amazon deleted Oliver's Candidate Profile showing that she applied for a job through the portal and altered the evidence to make it appear as if the positions closed before Oliver applied for them. (Docket # 37 at 8.) Oliver includes a screen shot

13

Case 2:22-cv-00149-NJ   Filed 05/08/23   Page 13 of 15   Document 60

showing she submitted an application for Full Time Shift Assistant on October 1, 2017. (Docket # 37-1 at 33.) Amazon argues that Oliver did not include any allegations concerning a failure to promote claim in her administrative charge before the EEOC; thus, Amazon was not on notice not to delete or destroy any records concerning such a claim. (Docket # 385 at 6–7.)

As an initial matter, as stated in the decision on Amazon's motion to dismiss, Oliver brings her alleged race discrimination claim under § 1981, not Title VII; thus, Oliver was not required to bring an EEOC charge before filing the claim in federal court. (Docket # 20 at 6.) Even so, Oliver has not shown that Amazon was on notice to preserve her candidate portal based on a race discrimination claim for failure to promote. It appears Oliver applied for the position of Full Time Shift Assistant on October 1, 2017, *prior* to her hiring by Amazon on November 6, 2018. (Docket # 37-1 at 33.) Oliver asserts that the position was held open until 2022 and only after Oliver filed her lawsuit did Amazon delete her portal and alter its records to show the position having closed in 2017. (Docket # 37 at 8.)

Beyond Oliver's speculation, it is entirely unclear how Amazon would have notice that Oliver was claiming she was not promoted based on race to a position she applied for prior to her hiring. Even so, the record Oliver received from Amazon confirms that she applied for the position of Full Time Shift Assistant on October 1, 2017. (Docket # 37-1 at 38.) Thus, even if Amazon had notice to preserve her prior applications, Oliver is not prejudiced from the loss of the actual application. Thus, her spoliation motion as to her job applications is denied.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion for Sanctions and Spoliation of Evidence (Docket # 37) is **DENIED**.

With resolution of this motion, briefing on Defendant's pending summary judgment motion will resume.

Plaintiff's brief in opposition to Defendant's summary judgment motion, along with supporting materials, is due no later than **June 7, 2023**.

Defendant's reply brief is due no later than **June 21, 2023**.

Dated at Milwaukee, Wisconsin this 8th day of May, 2023.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge