**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fᴇᴅ. R. Aᴘᴘ. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**[*]
**Chicago, Illinois 60604**

Submitted April 24, 2024
Decided April 24, 2024

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 23-2818

| | |
|---|---|
| JASMINE OLIVER,<br>*Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| v. | No. 22-CV-149 |
| AMAZON.COM SERVICES LLC,<br>*Defendant-Appellee*. | Nancy Joseph,<br>*Magistrate Judge*. |

**O R D E R**

Jasmine Oliver, who is black, sued her former employer, Amazon.com Services LLC, asserting that it refused to reasonably accommodate her disability in violation of the Americans with Disabilities Act, *see* 42 U.S.C. § 12112; discriminated and retaliated against her on the basis of sex in violation of Title VII of the Civil Rights Act of 1964,

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Rule 34(a)(2)(C).

*see* 42 U.S.C. § 2000e-2; and discriminated and retaliated against her based on race. *See* 42 U.S.C. § 1981. The magistrate judge, presiding with the consent of the parties under 28 U.S.C. § 636(c), granted Amazon's motion for summary judgment on all claims, concluding that Oliver was not disabled under the ADA and that she presented no evidence of discrimination or retaliation. We affirm.

We start by explaining the scope of our decision. Oliver's complaint was expansive and presented several theories of relief that were litigated to summary judgment. On appeal, however, Oliver adequately develops arguments relating only to the following claims: (1) failure to accommodate her anxiety and PTSD under the ADA; (2) sex discrimination under Title VII based on a hostile work environment caused by a coworker's sexual harassment; (3) retaliation under Title VII and the ADA; and (4) racial discrimination in terminating her employment. As Amazon points out, Oliver does not develop arguments for reversing the rulings on her other claims. Oliver appears to reply that all matters are under review because of the de novo standard of review, but that describes the deference we give to the district court's decision, not the scope of our review. An appellant forfeits review of any arguments that are not developed in the opening brief. *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020); *Cole v. Comm'r*, 637 F.3d 767, 772–73 (7th Cir. 2011). Our decision therefore addresses only "issues addressed in a manner beyond a mere generalized assertion of error." *Cole*, 637 F.3d at 773. Therefore, to the extent possible, we recount only the background relevant to this appeal.

## BACKGROUND

We construe the evidence in the summary judgment record in favor of Oliver, the non-movant, and draw all reasonable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In November 2018, Oliver began working as a Fulfillment Associate at Amazon's warehouse in Kenosha, Wisconsin. Her job generally consisted of organizing bulk merchandise or selecting, packing, and scanning merchandise for shipment. Throughout the day, managers often shuffled employees in her department as needed among multiple stations corresponding to discrete tasks.

Oliver experienced several difficulties during her tenure, leading her to file multiple complaints of discrimination with the Wisconsin Equal Rights Division. She worked at Amazon until June 2020, when she was fired. According to Amazon, Oliver

violated workplace policy when she threatened a fellow employee. Oliver later sued Amazon for discrimination based on race, sex, and disability, and for retaliating against her for filing administrative complaints.

### I.     Facts Related to the Failure to Accommodate Claim Under the ADA

In July 2019, Oliver learned of a rumor among her peers that she was transgender, which is untrue. After asking around, Oliver identified three people in her department who she believed were responsible for the rumor. About two weeks later, she told the human resources department that the rumors triggered her anxiety, and she orally requested to be stationed away from the responsible parties.

A few months later, Oliver filled out an "accommodation questionnaire" in which she requested flexible shifts, more breaks, placement away from the rumormongers, and she "recommended" that she be allowed "to play soft music in a headset" as an accommodation for her anxiety. She attached a doctor's note stating that Amazon should accommodate her placement request "for her mental health" and should give her additional bathroom breaks.

The parties dispute whether, in response to Oliver's accommodation request, senior management told Oliver's supervisor to station her away from her three antagonists when work requirements allowed. But it is undisputed that, at a meeting regarding her accommodation request, Oliver refused offers to work "upstairs" or transfer to another department. Oliver's supervisor told her that if she felt anxiety, she could go to the bathroom, and another employee would cover her position. Oliver testified that she availed herself of those breaks when she felt symptoms of her anxiety flare up, although she states that no one covered for her.

### II.    Facts Related to Oliver's Claim of Hostile Work Environment

Oliver testified that, while she worked in the fulfillment department, a male coworker repeatedly asked her out and called her "his wife." This culminated one day during a break, when the employee showed her a picture of himself shirtless, touched her, spoke to her about raping women, and threw a device at her when she rebuffed him. Oliver reported the incident to a third-party hotline that Amazon makes available to employees, but she did not provide her name or department and identified the man only by his first name and job as a "packer." (There were multiple people with that name at the facility.) Oliver also reported the incident to the police, who came to the facility to meet with her and members of Amazon's human resources and security

teams. At the meeting, Oliver told the police she did not want them to pursue the matter further. The human resources officer who attended the meeting avers that Oliver also said she did not want him to investigate the matter, although Oliver attempted to dispute this testimony by saying that she left directly after the meeting.

### III. Facts Related to the Retaliation Claims Under Title VII and the ADA and the Race Discrimination Claim under Section 1981

In response to the conditions at the warehouse, Oliver filed multiple complaints with the Wisconsin Equal Rights Division in late 2019 and early 2020, alleging that Amazon discriminated against her based on her sex and disability.

On May 18, 2020, Oliver had the first of two altercations with another employee. As she was leaving the building for the break, she passed near Marissa Dyess's station, and the women began yelling at each other. Dyess reported the incident to human resources, stating that she had asked Oliver to maintain social distancing. Oliver admits that she responded, "f*** you" and "these are my legs, and I'm gonna go where I wanna to go."

A few days later, on May 23, the women had another clash, which began when Dyess again reminded Oliver to stay six feet away. It is undisputed that Oliver then told Dyess that she had been to jail for fighting, that she repeatedly shouted at Dyess to "beat my a** then" and yelled "let's go, we do it now," and that the incident ended only when other employees physically separated the two. Oliver was placed on leave during an investigation of the incidents. The investigator interviewed neutral witnesses and reviewed security footage, and ultimately recommended that Amazon fire Oliver for violating workplace policy. About three weeks later, Amazon informed Oliver by email and in a letter that her employment was terminated, effective June 18, 2020. Oliver analyzed the metadata and learned that the file that later became the termination letter was created before her first altercation with Dyess.

According to Oliver, Amazon did not fire white employees who threatened or fought with others at work. She identified three instances that she believed mirrored her altercations with Dyess. First, she submitted an affidavit from a coworker who stated that an unnamed white employee had told the coworker to "f*** off" and "made threats and became aggressive." Second, Oliver avers that a white employee named Rachel "threatened violence and was neither suspended nor terminated because she is white."

No. 23-2818　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 5

Oliver also claims there was an incident between "Tammie and Kyle" who are white but does not describe any outcome of that incident.

### IV.　　Procedural History

After discovery, the district court granted Amazon's motion for summary judgment on all claims. As relevant here, the district court first determined that, with respect to her ADA claim, Oliver is not a qualified individual with a disability because she claimed that she became disabled only when working alongside particular people. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524–25 (7th Cir. 1996) (plaintiff alleging "inability to perform a particular job for a particular employer" not a qualified individual with a disability). Next, the court concluded that Amazon could not be liable for any hostile work environment because it did not negligently respond to Oliver's vague reports of sexual harassment, particularly when Oliver herself created the impression that she did not want further inquiry. As for the racial discrimination claims, Oliver did not show discriminatory intent because she did not provide evidence that the white employees who purportedly engaged in threats or fighting were similarly situated. Last, Oliver's evidence of pretext—metadata in her termination letter and suspicious timing—would not allow a reasonable jury to conclude that Amazon retaliated against Oliver for filing charges with the Equal Rights Division.

## DISCUSSION

We review the decision to grant summary judgment de novo. *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022).

Oliver first challenges the district court's ruling on her claim for failure to accommodate, asserting that the district court overlooked some of her requested accommodations. But the ADA entitles only "qualified individuals with a disability" to reasonable accommodations—and Oliver has produced no evidence that she is a protected person. *See Frazier-Hill v. Chicago Transit Auth.*, 75 F.4th 797, 803 (7th Cir. 2023). A disability is "a physical or mental impairment that substantially limits one or more major life activities," such as "working," 42 U.S.C. § 12102, when comparing that individual to most people in the general population. *See Frazier-Hill*, 75 F.4th at 803 (citing 29 C.F.R. § 1630.2(j)(1)(ii)). Although this should be "construed broadly in favor of coverage," "not every impairment will constitute a disability" under the ADA. 29 C.F.R. § 1630.2(j)(1)(i).

Here, Oliver testified that when she was near the three rumormongers, her anxiety caused her to feel "aggressive," "hypervigilant," her heart rate increased, and she lost some concentration. But there is no evidence that these symptoms created a substantial limitation on her ability to work compared to the general population. *See Frazier-Hill*, 75 F.4th at 803. Although she reported her symptoms to Amazon, she did not say anything to suggest a substantial effect on her ability to work. And the record evidence shows that her symptoms did not create a substantial limitation: Even after the rumors began and "triggered" her anxiety, Oliver received positive performance reviews and met productivity goals. And she rejected the alternative placements she was offered, suggesting that her condition was manageable.

Next, Oliver disputes the district court's determination regarding her claim that her coworker's sexual harassment created a hostile work environment. Whether the harassment occurred is not the question; for Amazon to be liable, Oliver must show that Amazon has "been negligent in discovering or remedying" it. *See Paschall v. Tube Processing Corp.*, 28 F.4th 805, 813 (7th Cir. 2022). Oliver first reported the harassment through the anonymous call to the third-party hotline. Oliver argues that Amazon was negligent when it failed to respond and that the district court improperly absolved Amazon because it is a large company. But the Kenosha facility's size factors into the reasonableness of Amazon's response to her anonymous complaint. No reasonable jury could find an employer negligent for failing to act on an anonymous complaint identifying the harasser only by his first name at a facility as large as the Kenosha warehouse. Amazon learned more when Oliver summoned the police to the warehouse, but Oliver said she did not want police to pursue the matter. She testified that she then left the meeting without speaking to human resources to explain that she wanted Amazon to investigate further, even if she did not want the police involved. There is no evidence that she followed up in the days after this meeting or that she reported any additional harassment. Even discounting the evidence that Oliver told Amazon not to investigate, no reasonable jury could find Amazon negligent under these circumstances.

As to her retaliation claims, Oliver must point to sufficient evidence for a reasonable jury to conclude that but for her requests for accommodation or complaints to the Wisconsin Equal Rights Division, Amazon would not have terminated her. *See University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (Title VII); *Rowlands v. United Parcel Serv.*, 901 F.3d 792, 801 (7th Cir. 2018) (ADA). Oliver argues that the district court overlooked evidence that Amazon's proffered reason for firing her was pretextual, but her evidence was insufficient to create a dispute of fact.

Here, Amazon offered a legitimate, nondiscriminatory explanation for firing Oliver: She engaged in verbal altercations with a coworker that violated the company's policies against threats and violence. Oliver does not dispute the conduct. And even if we assume in Oliver's favor that Amazon created the file that later became her termination letter before the first incident with Dyess, Oliver can only speculate as to the significance of this timing—and speculation cannot defeat summary judgment. *See Bishop v. Air Line Pilots Ass'n Int'l*, 5 F.4th 684, 693 (7th Cir. 2021). Her argument regarding suspicious timing is also unavailing. Suspicious timing alone is rarely enough to show retaliatory motive; the timing must suggest a connection between the protected activity—requesting an accommodation or filing an administrative complaint—and an adverse action. *See* 42 U.S.C. § 2000e-3(a) (Title VII); *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814–15 (7th Cir. 2015) (ADA). Oliver last engaged in protected activity in January 2020, when she filed a second administrative complaint, more than five months before she was fired. No reasonable jury could infer retaliatory motive.

Last, Oliver argues that she made a prima facie case that her firing was racially motivated by producing evidence that white employees were not fired for threatening others. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). But Oliver's evidence was vague at best: She gave only first names and did not say what kind of threats were made and when, or whether Amazon even knew about some of the incidents. *See Chaib v. Geo Group, Inc.*, 819 F.3d 337, 342 (7th Cir. 2016). Indeed, she produced no evidence to support her assertion that these employees were not disciplined or fired, or that, if they weren't, it was because of their race and not the nature of their conduct as compared to hers.

In any event, there is no evidence that Amazon's reason for terminating her employment was pretextual—that is, a "phony excuse" for firing her. *See id.* at 343. The record shows that, while investigating the incident, Amazon collected information that corroborated Dyess's statement that Oliver had threatened her. Threats undisputedly violate Amazon's policy against violence. Moreover, the timing of her firing was closely connected to the altercations and the ensuing investigation. Amazon fired Oliver about three weeks after the second altercation—and Oliver was on leave throughout that period. And Amazon never took any kind of disciplinary action against Oliver before the incidents with Dyess. Accordingly, there is no evidence that Amazon's rationale is pretext for racial discrimination.

AFFIRMED

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

April 24, 2024

Before
FRANK H. EASTERBROOK, *Circuit Judge*
DAVID F. HAMILTON, *Circuit Judge*
MICHAEL B. BRENNAN, *Circuit Judge*

CERTIFIED COPY
A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

| | |
|---|---|
| No. 23-2818 | JASMINE OLIVER,<br>         Plaintiff - Appellant<br><br>v.<br><br>AMAZON.COM SERVICES LLC,<br>         Defendant - Appellee |
| **Originating Case Information:** ||
| District Court No: 2:22-cv-00149-NJ<br>Eastern District of Wisconsin<br>Magistrate Judge Nancy Joseph ||

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

_____

Clerk of Court

form name: **c7_FinalJudgment**   (form ID: **132**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

May 16, 2024

To:  Gina M. Colletti
     UNITED STATES DISTRICT COURT
     Eastern District of Wisconsin
     Milwaukee, WI 53202-0000

|  | |
|---|---|
| No. 23-2818 | JASMINE OLIVER,<br>            Plaintiff - Appellant<br><br>v.<br><br>AMAZON.COM SERVICES LLC,<br>            Defendant - Appellee |
| **Originating Case Information:** ||
| District Court No: 2:22-cv-00149-NJ<br>Eastern District of Wisconsin<br>Magistrate Judge Nancy Joseph ||

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                           No record to be returned

form name: **c7_Mandate**    (form ID: **135**)